**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Raymond WERTIS, Defendant-
Appellant.**

**No. 74–1742.**

United States Court of Appeals,
Fifth Circuit.

Dec. 20, 1974.

Rehearing Denied Feb. 10, 1975.

Ronald I. Strauss, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Miami, Fla., Marty Steinberg, Spec. Atty., U. S. Dept. Justice, Miami Strike Force, Miami, Fla., Thaddeus B. Hodgdon, Atty., Appellate Section, Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before GEWIN, AINSWORTH and GEE, Circuit Judges.

PER CURIAM:

Record evidence indicates that in 1970 Appellant Wertis, then a Dade County police sergeant, was selling copies of grand jury subpoenas to participants in an illegal bookmaking enterprise operating in the North Miami area. He was furnished these by his wife, a telephone company employee. Since these subpoenas were issued in order to gather subscriber information about telephone numbers of suspected bookmakers, Wertis' vendees were eager to know whether and when their numbers were listed. On more than one occasion they were able, by use of Wertis' information, to close operations at a listed number and so anticipate and evade the investigation. Convicted on three counts of conspiracy to conduct and abetting the operation of illegal gambling, as well as conspiracy to obstruct Florida law,[1] he received concurrent two-year terms on each. He advances five points on this appeal.

As his lead point, Wertis asserts error in the district court's refusal to permit his counsel to conduct an in-person voir dire or to ask the jury questions in certain areas supposedly not touched on by the court's inquiries. The district court has broad discretion in the conduct of the voir dire examination and may do so to the exclusion of counsel. F.R.Crim.P. 24(a); Hawkins v. United States, 434 F.2d 738 (5th Cir. 1970). As for the complaint of refusal by the court to ask additional questions proposed by appellant's counsel, the portions of the record to which we are cited reveal no such request, but a mere exposition by counsel of areas in which he would ask questions were he permitted to do so. The impression left by the passage upon which appellant relies is of a strong and reiterated request by counsel himself to interrogate, with an indication that nothing else would serve— not of a request that the court ask further questions.[2] Anyhow, the "areas" in which he manifested interest were either improper for voir dire or adequately covered in the court's very thorough interrogation of the jurors. The point is meritless.

Complaint is next made that asserted *Brady*[3] material was produced too late to be of maximum use to the defendant: at rather than before trial. The items concerned are statements and "rap sheets" tending in minor ways to impeach the testimony and in more significant degree to degrade the characters of unindicted co-conspirator witnesses. In main, this is classic Jencks Act[4] matter, required to be disclosed only *after* each witness had testified and usable by the defense only for impeachment; minor inconsistencies which tend to impeach the government's theory of witnesses in small degree do not elevate

---

1. 18 U.S.C. §§ 2, 371, 1511 & 1955.

2. This is especially so in view of counsel's statement, just before asking to interrogate personally, that he had "no further questions."

3. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

4. 18 U.S.C. § 3500.

Jencks Act statements to the status of *Brady* materal. United States v. Harris, 458 F.2d 670 (5th Cir. 1972). Nor as to these or the rap sheets does appellant appear to have been harmed by the timing of disclosure, the subject of his sole complaint, having used the frail weapons so presented him to full advantage.

Wertis' final complaint which merits brief discussion is that the court erred in refusing to permit a psychiatrist to opine [5] whether a principal prosecution witness " . . . would . . . have a tendency to be reliable as a witness in distinguishing the truth from non-truth, realities from fantasies . . . . " Such a question as that proffered is beyond the competence of any witness. Peeled of its thin veneer of jargon, it amounts to no more than an inquiry whether the witness is to be believed by the jury or not. And though it approaches somewhat to the admissibility line, it lies at about the same distance on its wrong side as those approved in *Partin* [6] lie on its right. These concerned the existence vel non of a deviant mental condition and the effect of that condition on the witnesses' capacity to see and hear. The *Partin* inquiries test the witnesses' capacity and competence; the instant ones place the psychiatrist in the posture of a compurgator (or anti-compurgator). At all events, the exclusion of this inquiry was plainly harmless: the witness who was its subject was only one of several who testified to essentially the same matters, and his credibility was placed in hot issue by use, among other materials, of the medical records, later admitted in evidence.

Appellant's final two points [7] are foreclosed by the concurrent sentence doctrine.

Affirmed.

5. The point is wrapped (and well-nigh concealed) in another: complaint of the exclusion of certain medical records upon which the excluded testimony would be based. Since they were offered solely for this impermissible purpose, their exclusion at that point was not harmful.

6. United States v. Partin, 493 F.2d 750 (5th Cir. 1974).

7. That one of the counts upon which he was convicted was multiplicitous with another, and that two of the counts properly carry lesser punishments than he received.