STATE of Minnesota, Respondent,

v.

Camilo SALDANA, Appellant.

No. 81–549.

Supreme Court of Minnesota.

Aug. 31, 1982.

C. Paul Jones, Public Defender, and Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Gary Hansen and Barbara D. Gill, Sp. Asst. Attys. Gen., St. Paul, Daniel Birkholz, County Atty., St. James, for respondent.

SCOTT, Justice.

Camilo Saldana appeals from his conviction of criminal sexual conduct in the first degree in violation of Minn. Stat. § 609.-342(e)(i) (1980). At trial appellant admitted that sexual intercourse had occurred but claimed it was consensual. To rebut appellant's claim, the state presented an expert witness who described the typical post-rape symptoms and behavior of rape victims, and gave her opinion that the complainant was a victim of rape and had not fabricated her allegations. We find that the admission of such testimony requires the reversal of appellant's conviction, and we remand for a new trial.

Our concern is directed toward the testimony of Lynn Dreyer, a counselor for sexual assault victims, who testified for the state. Dreyer, the director of the Victim Assistance Program in Mankato, holds a bachelor's degree in psychology and social work. Dreyer testified that she met Martha Fuller, the complainant, 10 days after the alleged rape and that she counseled Fuller for approximately a 10-week period. In her testimony, Dreyer explained the stages that a rape victim typically goes through and discussed typical behavior of victims after a rape. She then described Fuller's reactions as she had observed them. In response to a question, Dreyer testified that it was not unusual that Fuller did not report the incident until the following day and that many rape victims never report a rape. Dreyer stated that Fuller was the victim of "acquaintance rape," that she definitely believed Fuller was a victim of sexual assault and rape, and that she did not think Fuller fantasized or "made it up."

The issue is whether admission of testimony concerning typical post-rape symptoms and behavior of rape victims, opinions that Fuller was a victim of rape, and an opinion that Fuller did not fantasize the rape was reversible error.

■ To be admissible, expert testimony must be helpful to the jury in reaching its decision:

> The basic requirement of Rule 702 is the helpfulness requirement. If the subject of the testimony is within the knowledge and experience of a lay jury and the testimony of the expert will not add precision or depth to the jury's ability to reach conclusions about that subject which is within their experience, then the testimony does not meet the helpfulness test.

*State v. Helterbridle,* 301 N.W.2d 545, 547 (Minn.1980). If the jury is in as good a position to reach a decision as the expert, expert testimony would be of little assistance to the jury and should not be admitted. Expert testimony may also be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury. Minn. R. Evid. 403. Under this test of admissibility, we must examine each segment of Dreyer's testimony.

■ Dreyer's discussion of the stages a rape victim typically goes through was essentially an explanation of "rape trauma syndrome," [1] although she did not so label it. On the facts of the case before us, such testimony is of no help to the jury and produces an extreme danger of unfair prejudice. The factual question to be decided by the jury is whether the alleged criminal conduct occurred. It is not necessary that Fuller react in a typical manner to the incident. Fuller need not display the typical post-rape symptoms and behavior of rape victims to convince the jury that her view of the facts is the truth.

Rape trauma symdrome is not the type of scientific test that accurately and reliably determines whether a rape has occurred. The characteristic symptoms may follow *any* psychologically traumatic event. American Psychiatric Association, *Diagnos-*

---

1. Ann Burgess and Lynda Holmstrom coined the term in their seminal 1974 article to describe the recurring pattern of post-rape symptoms. Burgess & Holmstrom, *Rape Trauma Syndrome,* 131 Am. J. Psychiatry 981 (1974).

For a discussion of rape trauma syndrome, *see In re Pittsburgh Action Against Rape,* 494 Pa. 15, 428 A.2d 126, 138–40 (1981) (Larsen, J., dissenting).

*tic and Statistical Manual of Mental Disorders* 236 (3d ed. 1980). At best, the syndrome describes only symptoms that occur with some frequency, but makes no pretense of describing every single case. C. Warner, *Rape and Sexual Assault* 145 (1980). The jury must not decide this case on the basis of how most people react to rape or on whether Fuller's reactions were the typical reactions of a person who has been a victim of rape. Rather, the jury must decide what happened in *this case,* and whether the elements of the alleged crime have been proved beyond a reasonable doubt.

The scientific evaluation of rape trauma syndrome has not reached a level of reliability that surpasses the quality of common sense evaluation present in jury deliberations. As we stated in refusing to permit introduction of "battering parent" syndrome, the evidence may not be introduced "until further evidence of the scientific accuracy and reliability of syndrome or profile diagnoses can be established." *State v. Loebach,* 310 N.W.2d 58, 64 (Minn. 1981).[2] Permitting a person in the role of an expert to suggest that because the complainant exhibits some of the symptoms of rape trauma syndrome, the complainant was therefore raped, unfairly prejudices the appellant by creating an aura of special reliability and trustworthiness. Since jurors of ordinary abilities are competent to consider the evidence and determine whether the

alleged crime occurred, the danger of unfair prejudice outweighs any probative value. To allow such testimony would inevitably lead to a battle of experts that would invade the jury's province of fact-finding and add confusion rather than clarity.

■ Rape trauma syndrome is not a fact-finding tool, but a therapeutic tool useful in counseling. Because the jury need be concerned only with determining the facts and applying the law, and because evidence of reactions of other people does not assist the jury in its fact-finding function, we find the admission of expert testimony on rape trauma syndrome to be error.[3]

The second segment of Dreyer's testimony of questionable admissibility is her opinion that Fuller was raped.[4] The issue is whether the state may introduce expert testimony in a rape prosecution that, in the expert's opinion, a rape in fact occurred.

■ The primary criterion for admissibility is the helpfulness requirement as discussed above. An expert witness may testify in the form of an opinion, Minn. R. Evid. 702, and opinion testimony is not objectionable merely because it embraces an ultimate issue to be decided by the jury, Minn. R. Evid. 704. However, according to the Advisory Committee Comment to Rule 704, opinions involving a legal analysis or mixed questions of law and fact are deemed to be of no use to the jury.

2. Compare other cases in which expert testimony is excluded as scientifically inaccurate and unreliable, *State v. Mack,* 292 N.W.2d 764 (Minn. 1980) (hypnotically induced testimony); *State v. Hill,* 253 N.W.2d 378 (Minn. 1977) (polygraph test results).

3. The only case we have discovered that found no error in admitting similar evidence emphasized the overwhelming evidence of guilt of the defendant. *State v. LeBrun,* 37 Or.App. 411, 414, 415, 587 P.2d 1044, 1046, 1047 (1978) (no error in permitting "Rape Victim Advocate" to testify that victim's emotional state comported with that of most sexual abuse victims).

4. The prosecutor elicited the following testimony from Dreyer:
Q. Can you explain to the jury the stages that Martha Fuller went through since the date of this incident?
[Objection overruled.]

A * * * She has went through a lot because her rape is what we call acquaintance rape, where it involves someone that they know, and she's gone through a lot of feelings of guilt and internalizing the pain, because it is a friend and a personal friend of her husband [sic].
    *    *    *    *    *    *
Q From your professional involvement with Martha Fuller, do you have an opinion Miss Dreyer, as to whether or not this incident actually took place?
A I definitely believe that Martha was a victim of assault.
Q Of a sexual assault?
A Sexual assault and rape.

A majority of the courts that have considered the issue have held that admission of a doctor's opinion that rape or sexual assault had occurred is error.[5] A few courts in other jurisdictions have permitted a doctor who has physically examined the complaining witness shortly after the alleged rape to give an opinion that sexual intercourse was not voluntary.[6]

■ The admission of Dreyer's testimony constitutes error under the majority rule. Furthermore, because Dreyer is not a physician, never physically examined Martha Fuller and did not meet Fuller until 10 days after the alleged rape, the admission of Dreyer's testimony constitutes error even under the minority rule.

We conclude that the admission of Dreyer's testimony was error. Because the jurors were equally capable of considering the evidence and determining whether a rape occurred, Dreyer's opinion was not helpful. Her testimony was a legal conclusion which was of no use to the jury. Furthermore, the danger of unfair prejudice outweighed any probative value. Dreyer's testimony "gave a stamp of scientific legitimacy to the truth of the complaining witness's factual testimony." *People v. Izzo,* 90 Mich. App. 727, 730, 282 N.W.2d 10, 11 (1979).

■■ The final segment of Dreyer's testimony was her opinion that Fuller had not

fantasized the rape.[7] Once a witness is deemed competent, expert opinions concerning the witness's reliability in distinguishing truth from fantasy are generally inadmissible because such opinions invade the jury's province to make credibility determinations. *United States v. Jackson,* 576 F.2d 46, 49 (5th Cir. 1978); *United States v. Wertis,* 505 F.2d 683, 685 (5th Cir. 1974) (per curiam), *cert. denied,* 422 U.S. 1045, 95 S.Ct. 2662, 45 L.Ed.2d 697 (1975). Expert testimony concerning the credibility of a witness should be received only in "unusual cases." *United States v. Barnard,* 490 F.2d 907, 913 (9th Cir. 1973), *cert. denied,* 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). An example of such an unusual case is a sexual assault case where the alleged victim is a child or mentally retarded. *See Commonwealth v. Carter,* 9 Mass.App. 680, 403 N.E.2d 1191 (1980), *aff'd,* —— Mass. ——, 417 N.E.2d 438 (Mass. 1981) (examining pediatrician may give opinion relating to the ability of a retarded child to differentiate between reality and fantasy but not concerning whether the child was telling the truth about an alleged sexual assault).

■ The admission of Dreyer's testimony that Martha Fuller did not fantasize or fabricate her story was erroneous. First, there are no unusual circumstances in this case which warrant the admission of expert testimony concerning the credibility of Full-

---

5. *See, e.g., Farley v. State,* 324 So.2d 662 (Fla. App. 1975); *Commonwealth v. Gardner,* 350 Mass. 664, 216 N.E.2d 558 (1966); *People v. McGillen,* 392 Mich. 278, 220 N.W.2d 689 (1974) (dictum); *State v. Castore,* R.I., 435 A.2d 321 (1981); *Cartera v. Commonwealth,* 219 Va. 516, 248 S.E.2d 784 (1978). The examining physician may of course testify to observations of physical and emotional conditions, examinations and tests performed, and medical conclusions reached.

6. *See, e.g., State v. Miller,* 254 Iowa 545, 117 N.W.2d 447 (1962) (no reversible error in admitting examining physician's opinion that intercourse was not voluntary where jury did not convict of rape); *People v. LaPorte,* 103 Mich. App. 444, 303 N.W.2d 222 (1981) (no error in admitting attending physician's expert opinion, based upon the victim's physical and emotional conditions shortly after the incident, that there had been penetration against the will of complainant); *State v. Ring,* 54 Wash.2d 250, 339

P.2d 461 (1959) (no error in permitting physicians who examined prosecuting witness shortly after the episode to state that her physical condition could not have been the result of "ordinary normal sexual intercourse," because involved a question of medical science).

7. The prosecutor asked the question as follows:
Q Is there any way that this could have been consensual and that she fantasiased [sic]?
[Objection overruled.]
A I first of all believe that because rape is a crime of violence and a person is very humiliated and physically abused in a rape, that leads me to believe that not many women would fantasias [sic] or make something like this up when you know the degree of humiliation she will have to live with and speaking personally; Martha I do not think she fantasiased [sic] or made it up.

er, who is an adult with at least average intelligence. Second, Dreyer, who had no medical education or training, was unqualified to determine whether a person could differentiate between reality and fantasy or to detect whether a person was telling the truth or fabricating a story. Finally, the question and answer did not concern Fuller's general tendency to fantasize or fabricate but whether she fantasized or fabricated the particular facts at issue. Dreyer was simply stating her opinion that Fuller was telling the truth. Because credibility is the sole province of the jury, admission of the testimony was erroneous.

■ The final question for our determination is whether the erroneous admission of Dreyer's testimony mandates reversal of appellant's conviction and a new trial. Appellant admitted that sexual intercourse occurred. The sole issue in dispute was whether the sexual intercourse was voluntary. The evidence produced at trial could be interpreted to support the claim of either the complainant or appellant. The jury's determination depended largely upon which party it believed. Under these circumstances, Dreyer's testimony, presented as the unbiased opinion of an expert, may well have tipped the balance.

We hold that in this prosecution for criminal sexual conduct where the defendant claimed consent it was reversible error for an expert to testify concerning typical post-rape symptoms and behavior of rape victims and give opinions that the complainant was a victim of rape and had not fantasized the rape. Our holding is necessary to ensure accuracy in the truth-seeking process and to guarantee fairness to the accused. We overrule *State v. Cox,* 172 Minn. 226, 215 N.W. 189 (1927), to the extent it is inconsistent with this opinion. We reverse appellant's conviction and remand for a new trial. Because we have ordered a new trial we need not reach the other issues raised.

Reversed and remanded.

PETERSON, Justice (concurring specially).

I concur in the result, based upon the impermissible testimony of Ms. Dreyer that the victim had not fantasized or fabricated her story, and in overruling *State v. Cox,* 172 Minn. 226, 215 N.W. 189 (1927), to the extent it would approve such testimony.

WAHL, J., took no part in the consideration or decision of this case.