Joyce Jean SCOTT, Respondent,

v.

David Arthur JOHNSON, Appellant.

No. C9-85-825.

Court of Appeals of Minnesota.

Dec. 24, 1985.

Review Denied Feb. 19, 1986.

Warren V. Bigelow, Jr., Wayzata, for respondent.

David D. Alsop, Minnetonka, for appellant.

Heard, considered and decided by CRIPPEN, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

WOZNIAK, Judge.

David Johnson appeals from the trial court's special verdict finding him 85% negligent and awarding $200,977 in damages to respondent Joyce Scott for personal injuries arising out of an automobile accident. We reverse and remand for a new trial.

## FACTS

The accident occurred in Eden Prairie near the intersection of Highway 5 and 78th Street, where westbound 5 changes from two lanes to one lane. Both parties were traveling in the same direction. Johnson was accompanied in his vehicle by his wife and son.

According to Scott, she looked in her rearview mirror, looked over her shoulder, signaled, and made a lane change to the left lane in front of Johnson. She testified that she brought her car to a stop behind two vehicles stopped for the traffic light. She looked in her rearview mirrow and saw Johnson's car approach and eventually collide with the rear of her car. She testified that she had been stopped for several seconds before the collision, and that in her rearview mirror she saw Johnson talking to his wife.

Johnson testified that he was slowing down as he approached the intersection when he observed Scott's car pass on his right and suddenly veer into his lane of travel without signaling. He testified that he hit his brakes and the time period between his first observation of Scott and the crash was "immediate." He further testified that he didn't recall if her brake lights were on.

After the accident, Scott approached Johnson's vehicle. She asked how Johnson's baby was. He told her the baby was okay, and then said "You didn't even use your turn signal." He testified that she stated that she knew she didn't signal, she was in too big of a hurry, and she had a good insurance policy and Johnson needn't worry about anything. Johnson stated that Scott was upset at the time, but wasn't acting abnormal for someone who had just had an accident.

The accident was investigated by Officer Berkstrom who testified at trial based on his accident report. He testified that it was his procedure to talk to each party alone, and then put them together and fill out the report. The report indicated that the cause of the accident was Scott's sudden lane change without a signal, and that Johnson had no chance to stop. Based on his report, Berkstrom testified that both parties agreed that the accident was the fault of Scott.

Johnson testified that Berkstrom did follow the above procedure and that Scott did admit fault. Scott could not recall if Berkstrom talked to her separately and did not believe she admitted fault to Berkstrom.

Following the above testimony, Dr. Hunter, a psychologist, testified that in his opinion Scott was the type of person who would accept blame regardless of fault in that type of situation. He stated that he based his opinion on the fact that Scott was physically and sexually abused in childhood by her stepfather. On cross-examination, Hunter stated that his original examination of Scott, which occurred on December 11, 1984, lasted for three to four hours and included a battery of psychological tests. Neither the tests nor the 19-page report which summarized his examination revealed the alleged syndrome. Hunter also testified that he reexamined Scott at her attorney's request on January 7, 1985, one week prior to trial. After this interview, which lasted for approximately two hours and did not involve any further testing, Hunter formed the opinion that Scott had a tendency to accept blame under stress. Hunter stated that he had no opinion as to whether or not Scott lied at the scene of the accident, only that she had a tendency when placed under stress to admit fault.

Johnson objected on the basis of foundation and relevancy when Hunter was about to state his opinion. The court overruled the objection. At the close of evidence, Johnson again stated his objection and the court affirmed the ruling. The jury found Scott's damages to be $200,977 which included every penny of Scott's projected lost future earnings (including a rather speculative future wage increase).

## ISSUE

Did the trial court abuse its discretion when it permitted the admission of expert testimony concerning plaintiff's tendency to admit blame regardless of fault based on her history of childhood physical and sexual abuse?

## ANALYSIS

The admission of expert opinion generally rests within the discretion of the trial court. *State v. Myers*, 359 N.W.2d 604, 609 (Minn.1984). "A reviewing court will not reverse a trial court's determination unless there is an apparent error." *Id.* We agree with Johnson that the trial court erred.

Under modern standards, expert testimony on matters within the witness' field of expertise is admissible even if the expert's opinion touches on the ultimate issues that the jury must decide. Minn.R.Evid. 704. To be admissible under Minn.R.Evid. 702, however, expert testimony must assist the jury in resolving the factual issues presented. *Id.; State v. Saldana*, 324 N.W.2d 227, 229 (Minn.1982).

> If the subject of the testimony is within the knowledge and experience of a lay jury and the testimony of the expert will not add precision or depth to the jury's ability to reach conclusions about that subject which is within their experience, then the testimony does not meet the helpfulness test.

*State v. Helterbridle*, 301 N.W.2d 545, 547 (Minn.1980).

As a general rule, expert opinion testimony regarding the truth or falsity of a witness' testimony is to be rejected because the expert's status may lend an unwarranted "stamp of scientific legitimacy" to the allegations. *Myers*, 359 N.W.2d at 611; *State v. Soukup*, 376 N.W.2d 498 (Minn.Ct. App.1985).

> In most cases, even though an expert's testimony may arguably provide the jury with potentially useful information, the possibility that the jury may be unduly influenced by an expert's opinion mitigates against admission. Nor should the credibility of witnesses * * * turn on the outcome of a battle among experts.

*Myers*, 359 N.W.2d at 610.

In the present case, we do not believe that Hunter's testimony was helpful to the jury in reaching its decision. The jury's duty here was to decide which party's account of the accident was true. Hunter's testimony was directed solely at determining the truth or falsity of Scott's testimony. We believe the jury, through its own knowledge and experience, was capable of assessing Scott's credibility and reaching a decision on the issue.

Further, the admission of Hunter's testimony was prejudicial. The evidence produced at trial could be interpreted to support the claim of either party. The jury's determination depended largely on which party it believed. In laying her foundation, Scott did not demonstrate that the scientific evaluation of the "tendency to admit fault" has achieved a reliability which surpasses the quality of common sense jury evaluation. Under these circumstances, permitting Hunter to suggest that, because Scott was sexually abused, she therefore accepted blame regardless of fault at the accident scene, may well have tipped the balance between the parties. Presented as the unbiased opinion of an expert, Hunter's testimony added an aura of special trustworthiness to Scott's version of the facts. Additionally, the manner in which it was elicited from Hunter that he based his opinion on Scott's history of being sexually abused only served to exacerbate the prejudice. Since jurors of ordinary competence could decide the issue here, the danger of

unfair prejudice far outweighed any probative value.

## DECISION

We reverse the trial court and remand for a new trial on all issues.