145 Wis.2d 454 (1988)
427 N.W.2d 142
STATE of Wisconsin, Plaintiff-Respondent,
v.
Kenneth G. LAMB, Defendent-Appellant.[]
No. 87-0883-CR.
Court of Appeals of Wisconsin.
Submitted on briefs December 29, 1987.
Decided June 9, 1988.
*455 For the defendant-appellant the cause was submitted on the briefs of Mary E. Waitrovich, assistant state public defender.
For the plaintiff-respondent the cause was submitted on the brief of Donald J. Hanaway, attorney general, and Christopher G. Wren, assistant attorney general.
Before Gartzke, P.J., Dykman and Eich, JJ.
DYKMAN, J.
Kenneth Lamb appeals from a judgment convicting him of two counts of first degree sexual assault and one count of enticing a child for immoral purposes, and from an order denying his motions for post-conviction relief. The dispositive *456 issues are: (1) whether the evidence was sufficient to convict on the enticing charge; and (2) whether the testimony of an expert as to the general characteristics of sexually abused children and her own observation of the victim's behavior in this case was an opinion on the victim's credibility within the meaning of State v. Haseltine, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984).
Because the only evidence was that the victim was either carried into the room where the sexual assaults were committed, or was already in the room when Lamb entered it, we conclude that the state failed to prove an essential element of the enticement charge: that the victim was "persuaded" or "enticed" into the room within the meaning of sec. 944.12, Stats. We therefore reverse that conviction. We also conclude that the therapist's testimony impermissibly invaded the province of the jury, and that the trial court's error in admitting it was not harmless. We therefore reverse the sexual assault convictions and remand for a new trial.
Lamb was charged with the three offenses after O., a six year old, reported that Lamb had had sexual contact with him. At trial, O. testified that the incidents with Lamb occurred in the bedroom and bathroom of Kathleen Lamb's home. Kathleen Lamb testified that Lamb was alone in the house with O. at various times during the period in which the assaults 3were alleged to have been committed. Lamb denied that any of the incidents occurred. The jury found Lamb guilty on all three counts and the trial court denied his post-conviction motions. Other facts will be discussed below.

*457 I. EVIDENCE OF ENTICEMENT
Section 944.12, Stats., defines the crime of enticement as follows: "Any person 18 years of age or over, who, with intent to commit a crime against sexual morality, persuades or entices any child under 18 years of age into any vehicle, building, room or secluded place is guilty of a Class C felony." Lamb contends that there was insufficient evidence to convict him of the offense because the evidence was undisputed that he either forcibly carried O. into Lamb's bedroom or encountered him in the bathroom.
[1, 2]
When a defendant challenges the sufficiency of the evidence, the test is "whether the evidence adduced, believed, and rationally considered by the jury was sufficient to prove the defendant's guilt beyond a reasonable doubt." State v. Koller, 87 Wis. 2d 253, 266, 274 N.W.2d 651, 658 (1979). If the jury could have drawn the appropriate inference from the evidence to find Lamb guilty, we must sustain the verdict. State v. Alles, 106 Wis. 2d 368, 377, 316 N.W.2d 378, 382 (1982). The state argues that the evidence here supports the inference that Lamb's actions "operated to persuade rather than force [O.] to acquiesce in [the] acts ...." We disagree.
First, we do not consider Turner v. State, 76 Wis. 2d 1, 250 N.W.2d 706 (1977), to be, as the state argues, dispositive. In Turner, the defendant stated that when the victim, a nine-year-old girl who was out "trick-or-treating" on Halloween entered his house, he "`sort of helped her into the bedroom,'" where he sexually assaulted her. Id. at 4, 7, 15, 250 N.W.2d at 708, 710, 713. The court held that the statement permitted the jury to infer that "there was sufficient persuasion *458 exercised . . . ." Id. at 15, 250 N.W.2d at 713. In this case, however, the only testimony on the point was O.'s. He stated unequivocally that, while others in the house were napping, Lamb "would grab me and take me up" to the bedroom. O. also testified that some of the sexual activity took place in the bathroom and that he was either carried there or was already in the room when Lamb came in.
The pattern jury instruction gives the following definition of "persuade" and "entice," as those terms appear in sec. 944.12, Stats:
The words "persuade" and "entice" have the same meaning and consist of some act or words intended to lure or coax or attract another in order to cause that person to do something the other person would not otherwise do. In determining whether a child was enticed, you may take into consideration, as to each party, age, mental development, relationship to each other, sophistication or lack thereof, and all other facts and circumstances shown by the evidence.
Wis J ICriminal 1530. The definition is in accord with Webster's Third New International Dictionary, which defines "entice" as "to draw into evil ways: lead astray: TEMPT: . . . LURE," and "persuade" as "to induce by argument, entreaty, or expostulation ...: plead with: URGE: . . . bring about by argument and persuasion . . . ." Id. at 757, 1687.
[3]
There was no evidence of enticement. The only evidence is that Lamb picked up O., carried him into a room and assaulted him. O. testified that he did not want this to occur. Lamb did not "coax," "lure," "tempt" or "persuade" O.

*459 II. THE THERAPIST'S TESTIMONY
A child and family therapist, experienced in working with sexually abused children, testified about children's responses to sexual abuse and the emotional and other problems typically associated with abused children.[1]
The trial court, relying on Haseltine, indicated that it would allow the therapist to testify "as far as whether an incest victim would immediately or not immediately report the incest or may recant any accusation of incest." The district attorney responded that he "intended to ask [the therapist] about the late reporting question because that's specifically an issue in this case."
The district attorney asked the therapist: "Based on your training and experience, what kinds of psychological or emotional problems are commonly seen in sexually abused children?" The therapist testified that such children exhibit poor concentration, low self-esteem, anger, aggression, guilt, anxiety, fear, and problems in school.[2] She also testified that *460 sexually abused children frequently draw pictures of people with distorted body images.
The district attorney then asked the therapist what she observed about O. during therapy. The therapist testified that O. exhibited anger and fear toward his father, aggressive behavior, fear of leaving home, bedwetting, school problems, and he drew figures with distorted body images.[3] The therapist *461 made no reference to O.'s not having immediately reported the assaults.
In Haseltine, a psychiatrist testified as to patterns of behavior incest victims generally exhibit and was then allowed to give his expert opinion that there "`was no doubt whatsoever' that [the defendant's] daughter was an incest victim." Id. at 95-96, 352 N.W.2d at 675-76. We held that the witness's "opinion that [the defendant's] daughter was an incest victim is an opinion that she was telling the truth," and violated the general rule that "[n]o witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth." Id. at 96, 352 N.W.2d at 676, citing State v. Middleton, 657 P.2d 1215, 1221 (Or. 1983).
In State v. Jensen, 141 Wis. 2d 333, 415 N.W.2d 519 (Ct. App. 1987) we examined the reasons why an expert's testimony concerning the behavior of the *462 complaining witness after a disputed assault is inadmissible as evidence that the assault occurred. We said:
[U]nder Haseltine an expert is precluded from testifying that a complainant's behavior following an alleged sexual assault was proof that an assault occurred. The question of whether the conduct was consistent with that of a sexual assault victim is but another way of attempting to reach the impermissible conclusion that the conduct proves the assault.
In essence [the expert witness] testified that L.J.'s behavior following the alleged sexual assault demonstrated that she had been sexually assaulted. This testimony impermissibly bolstered L.J.'s credibility and her testimony that Jensen had assaulted her.
Jensen, 141 Wis. 2d at 340-41, 415 N.W.2d at 522.
Jensen, and its predecessor, Haseltine, 120 Wis. 2d 92, 352 N.W.2d 673, hold that opinion evidence concerning behavior exhibited by sexual assault complainants is admissible only under limited circumstances.
Depending on the case, the testimony of an expert might aid the jury. For example, an incest victim may not immediately report the incest, or may recant accusations of incest. Jurors might reasonably regard such behavior as an indication that the victim was not telling the truth. An expert could explain that such behavior is common among incest victims as a result of guilt, confusion, and a reluctance to accuse a parent (citation omitted).
Haseltine, 120 Wis. 2d at 97, 352 N.W.2d at 676. *463 Accord People v. Hampton, 746 P.2d 947 (Colo. 1987); State v. Hudnall, 359 S.E.2d 59 (S.C. 1987).[4] This is a better rule than one excluding this type of evidence, State v. Saldana, 324 N.W.2d 227 (Minn. 1982),[5] or a rule admitting it without a limit. State v. Allewalt, 517 A.2d 741 (Md. 1986).[6] This use of this type of *464 evidence prevents false assumptions on the part of the factfinder regarding the alleged victim's credibility, yet it does not constitute an opinion as to the guilt of the defendant.
[4]
In this case, the opinion evidence was used as evidence of defendant's guilt. Though the state stopped short of asking for the witness' opinion, the questions as to the behavior of assault victims followed by questions as to whether O. exhibited that sort of behavior left little doubt that the witness had an opinion and what that opinion was. The purpose of this testimony was to convince the jury that defendant was guilty because the witness believed he was guilty. Haseltine and Jensen prohibit the admission of this evidence.
Because there is a reasonable possibility that the error contributed to the conviction, it is not harmless. State v. Dyess, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231-32 (1985). Therefore we reverse the sexual assault convictions and remand for a new trial.
The dissent would permit an expert witness to give an opinion as to the symptoms he or she believes are exhibited by sexually abused persons, and then give an opinion that the victim exhibited those symptoms. Using the dissent's analysis, the expert could then be asked whether he or she had an opinion as to whether the victim had been sexually assaulted as long as the expert was not asked what that opinion was. We cannot accept this view because it legitimizes the evidence found objectionable in Haseltine and *465 Jensen by assuming the jury will not draw the very inference the evidence is designed to show. We disavow the dissent's assertion that we question a jury's ability to draw conclusions and inferences. That is one of a jury's functions. Deciding questions of law, however, is a court's function, and Haseltine and Jensen hold that certain types of evidence are inadmissible. The dissent disagrees with Haseltine and Jensen. However, whether we would reach the conclusions of those cases is irrelevant. We are bound by them. Section 752.41(2), Stats.

CONCLUSION
We reverse the enticement conviction because of the state's failure to prove an essential element of the charge. We also reverse the sexual assault convictions for the reasons stated and remand the cause for a new trial.
By the Court.Judgment and order reversed and cause remanded for a new trial.
EICH, J. (dissenting).
I agree with the majority's disposition of the enticement charge. O. was picked up and forcibly carried into the room where the assaults occurred. He testified that he did not want these acts to occur and that they hurt him. Lamb was properly charged with, and convicted of, first degree sexual assault for these forcible actions. But there was no evidence of enticement as that term is commonly defined and as it is defined in the law.
However, I disagree most strongly with the majority's reversal of the sexual assault convictions, based on its belief that the admission of RaChelle Luethold's testimony constituted reversible error.
*466 Luethold, a child and family therapist who was experienced in working with sexually abused children, testified generally about children's responses to sexual abuse and about the emotional and other problems typically associated with abused children. Among the responses and problems experienced by such children are poor concentration, depression, anger, aggression, guilt, anxiety, fear, and education dysfunctions. After this generalized discussion, Luethold was permitted to testify that she had observed O. exhibiting anger and fear toward his father, aggressive behavior, fear of leaving home, and bedwetting, and he was experiencing problems at school. In addition, he drew figures with distorted body images, another trait Luethold said was frequently observed in children who have been sexually abused.
The majority adopts Lamb's argument that Luethold's testimony was the equivalent of an expert opinion that O. was telling the truth when he reported the alleged assaultsa practice condemned in State v. Haseltine, 120 Wis. 2d 92, 96, 352 N.W.2d 673, 676 (Ct. App. 1984). In Haseltine, a psychiatrist testified as to patterns of behavior generally exhibited by incest victims. He was then allowed to give his expert opinion that there "was no doubt whatsoever' that [the defendant's] daughter was an incest victim." Id. The court held that the psychiatrist's "opinion that [the defendant's] daughter was an incest victim is an opinion that she was telling the truth," id., and was thus inadmissible as violative of the general rule that "[n]o witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically *467 competent witness is telling the truth." Id., citing State v. Middleton, 657 P.2d 1215, 1221 (Or. 1983).[1]
Similarly, in State v. Jensen, 141 Wis. 2d 333, 337, 415 N.W.2d 519, 521 (Ct. App. 1987), "an expert in the behavior exhibited by sexually abused children" testified that, in his opinion, "`the kinds of acting out behavior [observed in the victim were] consistent with children who were victims of sexual abuse[.]'" Noting that "[i]n essence, [the expert] testified that [the victim's] behavior following the alleged sexual assault demonstrated that she had been sexually assaulted," the court held that "the trial court erred by permitting [the expert] to express an opinion on th[e] issue." Id. at 340-41, 415 N.W.2d 522.
In this case, no such opinion was admitted. Indeed, it appears that Luethold did not offer any *468 opinion evidence at all. She simply testified as to certain behavioral characteristics commonly seen in children who have been sexually assaulted, and she reported her observations of O.'s behavior during her meetings with him. She did not, as in Haseltine, testify that there "`was no doubt whatsoever' that [O.] was an incest victim." Id., 120 Wis. 2d at 96, 352 N.W.2d at 676. Nor did she offer her opinion, expert or otherwise, that O.'s behavior was "`consistent with [that of] children who were victims of sexual abuse,'" as in Jensen, 141 Wis. 2d at 337, 415 N.W.2d at 521. Indeed, she did not even opine that O.'s behavior was "typical" of child sexual assault victims as the witness did in Middleton. She simply testified about sexually abused children generally and about her observations of O. The jury was free to draw its own conclusions and its own inferences from that testimony.
The majority appears to question the jury's ability to perform that function, for it suggests that the expert's testimony will somehow force all twelve jurors to abandon their own views of the evidence, and instead: (1) to interpret Luethold's factual testimony as the equivalent of an expert opinion on the defendant's guilt or innocence and (2) then, contrary to the judge's instructions and in violation of their oath as jurors, to accept that "opinion" as dispositive, thus turning their decisional duty wholly over to Luethold.
I reject that assumption. I give jurors more credit than that. Indeed, I have seen the assumption disproved time and again by a thousand or more jurors whom I have observed from the trial benchoften in the most difficult and sensitive casescarrying out their responsibilities with care, devotion, and discretion.
*469 Beyond that, cases like Haseltine, Jensenand now Lambindicate to me that courts are losing sight of the fact that child victims and witnesses simply do not fit into a judicial system whose rules are designed by and for adultsparticularly in cases such as this where their credibility is routinely called into question. And it is a real problem. While the exact figures may vary because of sampling techniques and the content of questions,[2] researchers in the field agree that "sexual victimization occurs in the lives of an important minority of all children." D. Finkelhor, Sexually Victimized Children 56 (1979). It is equally true that no child is too young to be the object of sexual or aggressive interest.
I agree that the credibility of witnesses in a criminal trial should not turn on the outcome of a battle among experts. It cannot be denied, however, that much expert testimony, whether in civil or criminal cases, is offeredand acceptedto show that another witness's statements or conclusions should not be believed. And that fact alone has never been *470 thought to render the testimony inadmissible. The test is not whether opinion evidence embraces an ultimate issue to be decided by the jury, but whether the expert's testimony, if believed, will assist the jury in understanding the evidence or determining a factual issue. Jacobson v. Greyhound Corp., 29 Wis. 2d 55, 62-63, 138 N.W.2d 133, 136-37 (1965).
Witness credibility is often the key issue in criminal cases, and with respect to most crimes such questions are peculiarly within the competence of the jury, whose common experience usually affords sufficient basis for the assessment of credibility. Where the subject is the sexual abuse of children, however, the very nature of the case "places lay jurors at a disadvantage ... [for] the common experience of the jury may represent a less than adequate foundation for assessing the credibility of a young child who complains of sexual abuse." State v. Myers, 359 N.W.2d 604, 610 (Minn. 1984).
In other areas of the civil and criminal law we have made special provisions for children based on their special needs. The juvenile code is but one example. The message of Jensen, and now the Lamb majority, is, however, that no such provisions are available in child sexual assault cases. The message to the child is: "You're on your own in an adult court-room, dealing with a very adult situation, facing adult attorneys, and all of the adults' rules are in full force and effect." This is not a message I would send. I would confine Haseltine and Jensen strictly to their facts; and because I believe those cases are factually *471 distinguishable, I would affirm Lamb's sexual assault convictions.[3]
NOTES
[] Petition to review granted.
[1] At the postconviction hearing the trial court found that the therapist had "testified clearly under Sec. 907.02 as an expert."
[2] More completely, the therapist noted various problems including apparent retardation, scattered concentration, low self-esteem, sense of unworthiness, increased anger, aggression toward siblings, guilt feelings, bedwetting and bowel problems in response to nervousness or anxiety, nightmares, fear of the dark, fear of being left alone, decreased school performance, withdrawal from social relationships and from closeness with parents or teachers, depression, fluctuating certainty, fantasies depicting symbols of intrusiveness such as snakes and knives, thoughts of suicide or death, extremes of either avoiding sexual things in conversation or being greatly preoccupied with sexual things, competition with siblings, overly agreeable and cooperative, being extremely sensitive to criticism, drawing distorted body images.
[3] During testimony, the therapist referred to an exhibit which was one of O.'s drawings made during a therapy session. The drawing had individuals with large triangular points in the center of the body that spit the legs apart. The therapist testified that she had "never seen a drawing that had that triangular point in the mid-section of the body before on any kind of drawing." She stated that children of O.'s age generally do not draw bodies this way. The therapist added that whatever the child exaggerates in the drawing is the thing they are most aware of. She stated that O. indicated he was afraid to be left alone on the date of that particular session.

The therapist testified to her experience with O. at various therapy sessions. The therapist testified that O. was continuing to bedwet and have nightmares; that he was extremely aggressive with his siblings; that school reports indicated that there was a big problem with aggressiveness and defiance toward the teacher; that O. was stealing some things; that O. painted a self-portrait, and O. described the body as being like a bell and that if it was wider at the base and that it felt like a bell; that O. made big long snakes out of clay and made them "bite" the therapist; that O.'s play evidenced a lot of guilt and things related to his desire to be a baby again.
At one session, the therapist had asked O. to draw a picture of his father "any way that [O.] wanted to and have anything happen to [Lamb] that [O.] wanted to have happen to [Lamb]." Upon being shown the picture by the D.A., and asked what the picture depicted, the therapist responded:
A. Basically, [O.] was saying that [O.] would like this person on fire and that his wiener would be on fire and that his mouth would be on fire and that [O.] would take a gun and shoot him rightthe green circle that's in the center about where the bellybutton would be. The person would be shot with a pistol. The legs would be cut off so he couldn't chase [O.] and the arms would be cut off so he couldn't catch [O.] and [O.] made reference to the breasts which were also on fire.
Q. That was, as instructed, a portrait of [O.'s] father?
A. Yes.
Q. Now, based upon your contact and evaluation of [O.], what sort of psychological or emotional problems have you identified?
 MR. KACHINSKY: Objection.
 THE COURT: I'll sustain the objection on the basis of our
prior conference. If there is any further discussion, we'll do it
outside the presence of the jury.
 MR. THOMAS: No, your honor. I understand the court's
ruling.
(By Mr. Thomas)
Q. Now, aside from [O.] and [O.]'s problems ....
[4] In People v. Hampton, 746 P.2d 947 (Colo. 1987), the issue was whether an expert could explain why rape victims delay in reporting a rape. Id. at 948-49. The issue of delay was a key point of the defense. Id. at 952. The court ruled that the expert testimony provided the jury with an explanation of the delay, and was properly admitted for that limited purpose. Id.

In State v. Hudnall, 359 S.E.2d 59 (S.C. 1987), the issue was whether an expert's testimony regarding the common characteristics of victims of sexual abuse was admissible to bolster the testimony of the complainant that the abuse had occurred. Id. at 61-62. The court held that, since the evidence had not been submitted in order to explain what the jury might have regarded as inconsistent behavior on the part of the complainant, the evidence was irrelevant and prejudicial. Id. at 62.
[5] In State v. Saldana, 324 N.W.2d 227 (Minn. 1982), the court stated the issue as "whether admission of testimony concerning typical post-rape symptoms and behavior of rape victims, opinions that Fuller was a victim of rape, and an opinion that Fuller did not fantasize the rape was reversible error." Id. at 229. In Saldana, the expert testified that "it was not unusual that Fuller did not report the incident until the following day and that many rape victims never report a rape." Id. The court said: "The jury must not decide this case on the basis of how most people react to rape or on whether Fuller's reactions were the typical reactions of a person who has been a victim of rape. Rather, the jury must decide what happened in this case, and whether the elements of the alleged crime have been proved beyond a reasonable doubt." Id. at 230 (emphasis in original).
[6] In State v. Allewalt, 517 A.2d 741 (Md. 1986), the expert witness testified that the complainant in a rape case suffered from post-traumatic stress disorder, and that in his opinion, the cause of the disorder was the rape complained of by the complainant. Id. at 741-42. The court held that the trial court did not abuse its discretion in admitting the expert's testimony in this case. Id. at 751.
[1] In Middleton, the witness, a county juvenile counselor, testified that the victim's behavior, which she had learned about from supervising the child's case, was "very much in keeping with children who have complained of sex molestation at home," id., 657 P.2d at 1218 n. 5, and was "not different at all, [but] very typical for a teenage sex abuse victim." Id. at 1219 n. 6. The observed behavior included running away, skipping school, and retracting an initial complaint to the police. Id.

The Middleton court upheld the trial court's admission of the counselor's testimony, dismissing the argument (adopted by the majority here) that the "jurors could be so impressed by the `aura of reliability' of expert testimony that they might trust it more than their own perceptions." Id. at 1221. Most significantly, the court held that the witness's testimonythat the victim's observed behavior was "very much in keeping" and "very typical" of the behavior of sexually abused childrendid not constitute "an opinion on the truth of the victim's testimony." Id. at 1219.
As indicated, I would so hold in this case, where the "expert" testimony was very similar, and may even be considered much less direct than that in Middleton.
[2] Surveys inquiring into portions of the male and female populations of the United States who were sexually abused as children yielded results ranging from lows of eight percent (for women) and three percent (for men) to highs of twenty-eight percent and nine percent, respectively. Typically, the percentages are in the range of twelve percent to twenty-two percent for females and five percent to six percent for males. McCord, "Expert Psychological Testimony About Child Complainants in Sexual Abuse Prosecutions: A Foray Into the Admissibility of Novel Psychological Evidence," 77 J. Crim. L. & Criminology 1, 3 (1986).

Earlier this spring the national press reported the results of a survey of 1,700 sixth- to ninth-graders in which twenty percent of the girls and six percent of the boys disclosed that they had been sexually abused. Children's Sexual Assault Attitudes Shock Researchers, The Capital Times, Madison, Wis., May 3, 1988, 6.
[3] There were other issues raised on the appeal which were not discussed by the majority in light of its finding of reversible error on the evidentiary question. With respect to those issues, I am satisfied first that the trial court did not abuse its discretion in allowing evidence of O.'s prior consistent statements and evidence of another witness's criminal record for impeachment purposes. I also believe that the trial court correctly excluded evidence relating to the victim's alleged observations of other sexual activity, and that Lamb is not entitled to a new trial in the interests of justice or because of the state's failure to disclose a witness's prior statement. Finally, Lamb has not established that he was denied the effective assistance of counsel.