DYKMAN, J.
Kenneth Lamb appeals from a judgment convicting him of two counts of first degree sexual assault and one count of enticing a child for immoral purposes, and from an order denying his motions for post-conviction relief. The dispositive *456 issues are: (1) whether the evidence was sufficient to convict on the enticing charge; and (2) whether the testimony of an expert as to the general characteristics of sexually abused children and her own observation of the victim’s behavior in this case was an opinion on the victim’s credibility within the meaning of State v. Haseltine, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984).
Because the only evidence was that the victim was either carried into the room where the sexual assaults were committed, or was already in the room when Lamb entered it, we conclude that the state failed to prove an essential element of the enticement charge: that the victim was "persuaded” or "enticed” into the room within the meaning of sec. 944.12, Stats. We therefore reverse that conviction. We also conclude that the therapist’s testimony impermissibly invaded the province of the jury, and that the trial court’s error in admitting it was not harmless. We therefore reverse the sexual assault convictions and remand for a new trial.
Lamb was charged with the three offenses after O., a six year old, reported that Lamb had had sexual contact with him. At trial, O. testified that the incidents with Lamb occurred in the bedroom and bathroom of Kathleen Lamb’s home. Kathleen Lamb testified that Lamb was alone in the house with O. at various times during the period in which the assaults were alleged to have been committed. Lamb denied that any of the incidents occurred. The jury found Lamb guilty on all three counts and the trial court denied his post-conviction motions. Other facts will be discussed below.
*457 I. EVIDENCE OF ENTICEMENT
Section 944.12, Stats., defines the crime of enticement as follows: "Any person 18 years of age or over, who, with intent to commit a crime against sexual morality, persuades or entices any child under 18 years of age into any vehicle, building, room or secluded place is guilty of a Class C felony.” Lamb contends that there was insufficient evidence to convict him of the offense because the evidence was undisputed that he either forcibly carried O. into Lamb’s bedroom or encountered him in the bathroom.
When a defendant challenges the sufficiency of the evidence, the test is "whether the evidence adduced, believed, and rationally considered by the jury was sufficient to prove the defendant’s guilt beyond a reasonable doubt.” State v. Koller, 87 Wis. 2d 253, 266, 274 N.W.2d 651, 658 (1979). If the jury could have drawn the appropriate inference from the evidence to find Lamb guilty, we must sustain the verdict. State v. Alles, 106 Wis. 2d 368, 377, 316 N.W.2d 378, 382 (1982). The state argues that the evidence here supports the inference that Lamb’s actions "operated to persuade rather than force [O.] to acquiesce in [the] acts_” We disagree.
First, we do not consider Turner v. State, 76 Wis. 2d 1, 250 N.W.2d 706 (1977), to be, as the state argues, dispositive. In Turner, the defendant stated that when the victim, a nine-year-old girl who was out "trick-or-treating” on Halloween entered his house, he "'sort of helped her into the bedroom,’” where he sexually assaulted her. Id. at 4, 7, 15, 250 N.W.2d at 708, 710, 713. The court held that the statement permitted the jury to infer that "there was sufficient persuasion *458 exercised ...Id. at 15, 250 N.W.2d at 713. In this case, however, the only testimony on the point was O.’s. He stated unequivocally that, while others in the house were napping, Lamb "would grab me and take me up” to the bedroom. O. also testified that some of the sexual activity took place in the bathroom and that he was either carried there or was already in the room when Lamb came in.
The pattern jury instruction gives the following definition of "persuade” and "entice,” as those terms appear in sec. 944.12, Stats:
The words "persuade” and "entice” have the same meaning and consist of some act or words intended to lure or coax or attract another in order to cause that person to do something the other person would not otherwise do. In determining whether a child was enticed, you may take into consideration, as to each party, age, mental development, relationship to each other, sophistication or lack thereof, and all other facts and circumstances shown by the evidence.
Wis J I — Criminal 1530. The definition is in accord with Webster’s Third New International Dictionary, which defines "entice” as "to draw into evil ways: lead astray: TEMPT: ... LURE,” and "persuade” as "to induce by argument, entreaty, or expostulation ...: plead with: URGE: ... bring about by argument and persuasion_” Id. at 757, 1687.
There was no evidence of enticement. The only evidence is that Lamb picked up O., carried him into a room and assaulted him. O. testified that he did not want this to occur. Lamb did not "coax,” "lure,” "tempt” or "persuade” O.
*459 II. THE THERAPIST’S TESTIMONY
A child and family therapist, experienced in working with sexually abused children, testified about children’s responses to sexual abuse and the emotional and other problems typically associated with abused children.[1]
The trial court, relying on Haseltine, indicated that it would allow the therapist to testify "as far as whether an incest victim would immediately or not immediately report the incest or may recant any accusation of incest.” The district attorney responded that he "intended to ask [the therapist] about the late reporting question because that’s specifically an issue in this case.”
The district attorney asked the therapist: "Based on your training and experience, what kinds of psychological or emotional problems are commonly seen in sexually abused children?” The therapist testified that such children exhibit poor concentration, low self-esteem, anger, aggression, guilt, anxiety, fear, and problems in school.[2] She also testified that *460 sexually abused children frequently draw pictures of people with distorted body images.
The district attorney then asked the therapist what she observed about O. during therapy. The therapist testified that O. exhibited anger and fear toward his father, aggressive behavior, fear of leaving home, bedwetting, school problems, and he drew figures with distorted body images.[3] The therapist *461 made no reference to O.’s not having immediately reported the assaults.
In Hoseltine, a psychiatrist testified as to patterns of behavior incest victims generally exhibit and was then allowed to give his expert opinion that there "'was no doubt whatsoever’ that [the defendant’s] daughter was an incest victim.” Id. at 95-96, 352 N.W.2d at 675-76. We held that the witness’s "opinion that [the defendant’s] daughter was an incest victim is an opinion that she was telling the truth,” and violated the general rule that "[n]o witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth.” Id. at 96, 352 N.W.2d at 676, citing State v. Middleton, 657 P.2d 1215, 1221 (Or. 1983).
In State v. Jensen, 141 Wis. 2d 333, 415 N.W.2d 519 (Ct. App. 1987) we examined the reasons why an expert’s testimony concerning the behavior of the *462 complaining witness after a disputed assault is inadmissible as evidence that the assault occurred. We said:
[U]nder Haseltine an expert is precluded from testifying that a complainant’s behavior following an alleged sexual assault was proof that an assault occurred. The question of whether the conduct was consistent with that of a sexual assault victim is but another way of attempting to reach the impermissible conclusion that the conduct proves the assault.
In essence [the expert witness] testified that L.J.’s behavior following the alleged sexual assault demonstrated that she had been sexually assaulted. This testimony impermissibly bolstered L.J.’s credibility and her testimony that Jensen had assaulted her.
Jensen, 141 Wis. 2d at 340-41, 415 N.W.2d at 522.
Jensen, and its predecessor, Haseltine, 120 Wis. 2d 92, 352 N.W.2d 673, hold that opinion evidence concerning behavior exhibited by sexual assault complainants is admissible only under limited circumstances.
Depending on the case, the testimony of an expert might aid the jury. For example, an incest victim may not immediately report the incest, or may recant accusations of incest. Jurors might reasonably regard such behavior as an indication that the victim was not telling the truth. An expert could explain that such behavior is common among incest victims as a result of guilt, confusion, and a reluctance to accuse a parent (citation omitted).
Haseltine, 120 Wis. 2d at 97, 352 N.W.2d at 676. *463 Accord People v. Hampton, 746 P.2d 947 (Colo. 1987); State v. Hudnall, 359 S.E.2d 59 (S.C. 1987).[4] This is a better rule than one excluding this type of evidence, State v. Saldana, 324 N.W.2d 227 (Minn. 1982),[5] or a rule admitting it without a limit. State v. Allewalt, 517 A.2d 741 (Md. 1986).[6] This use of this type of *464 evidence prevents false assumptions on the part of the factfinder regarding the alleged victim’s credibility, yet it does not constitute an opinion as to the guilt of the defendant.
In this case, the opinion evidence was used as evidence of defendant’s guilt. Though the state stopped short of asking for the witness’ opinion, the questions as to the behavior of assault victims followed by questions as to whether O. exhibited that sort of behavior left little doubt that the witness had an opinion and what that opinion was. The purpose of this testimony was to convince the jury that defendant was guilty because the witness believed he was guilty. Haseltine and Jensen prohibit the admission of this evidence.
Because there is a reasonable possibility that the error contributed to the conviction, it is not harmless. State v. Dyess, 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231-32 (1985). Therefore we reverse the sexual assault convictions and remand for a new trial.
The dissent would permit an expert witness to give an opinion as to the symptoms he or she believes are exhibited by sexually abused persons, and then give an opinion that the victim exhibited those symptoms. Using the dissent’s analysis, the expert could then be asked whether he or she had an opinion as to whether the victim had been sexually assaulted as long as the expert was not asked what that opinion was. We cannot accept this view because it legitimizes the evidence found objectionable in Haseltine and *465 Jensen by assuming the jury will not draw the very inference the evidence is designed to show. We disavow the dissent’s assertion that we question a jury’s ability to draw conclusions and inferences. That is one of a jury’s functions. Deciding questions of law, however, is a court’s function, and Haseltine and Jensen hold that certain types of evidence are inadmissible. The dissent disagrees with Haseltine and Jensen. However, whether we would reach the conclusions of those cases is irrelevant. We are bound by them. Section 752.41(2), Stats.
CONCLUSION
We reverse the enticement conviction because of the state’s failure to prove an essential element of the charge. We also reverse the sexual assault convictions for the reasons stated and remand the cause for a new trial.
By the Court. — Judgment and order reversed and cause remanded for a new trial.

 At the postconviction hearing the trial court found that the therapist had "tesified clearly under Sec. 907.02 as an expert."

 More completely, the therapist noted various problems including apparent retardation, scattered concentration, low self-esteem, sense of unworthiness, increased anger, aggression toward siblings, guilt feelings, bedwetting and bowel problems in response to nervousness or anxiety, nightmares, fear of the dark, fear of being left alone, decreased school performance, withdrawal from social relationships and from closeness with parents or teachers, depression, fluctuating certainty, fantasies depicting symbols of intrusiveness such as snakes and knives, thoughts of suicide or death, extremes of either avoiding sexual things in conversation or being greatly preoccupied with sexual things, competition with siblings, overly agreeable and cooperative, being extremely sensitive to criticism, drawing distorted body images.

 During testimony, the therapist referred to an exhibit which was one of O.’s drawings made during a therapy session. The drawing had individuals with large triangular points in the center of the body that spit the legs apart. The therapist testified that she had "never seen a drawing that had that triangular point in the mid-section of the body before on any kind of drawing.” She stated that children of O.’s age generally do not draw bodies this way. The therapist added that whatever the child exaggerates in the drawing is the thing they are most aware of. She stated that O. indicated he was afraid to be left alone on the date of that particular session.
The therapist testified to her experience with 0. at various therapy sessions. The therapist testified that 0. was continuing to bedwet and have nightmares; that he was extremely aggressive with his siblings; that school reports indicated that there was a big problem with aggressiveness and defiance toward the teacher; that 0. was stealing some things; that O. painted a self-portrait, and 0. described the body as being like a bell and that if it was wider at the base and that it felt like a bell; that O. made big long snakes out of clay and made them "bite" the therapist; that O.'s play evidenced a lot of guilt and things related to his desire to be a baby again.
At one session, the therapist had asked O. to draw a picture of his father "any way that [O.] wanted to and have anything happen to [Lamb] that [O.] wanted to have happen to [Lamb].” Upon being shown the picture by the D.A., and asked what the picture depicted, the therapist responded:
A. Basically, [O.] was saying that [O.] would like this person on fire and that his wiener would be on fire and that his mouth *461 would be on fire and that [O.] would take a gun and shoot him right — the green circle that’s in the center about where the bellybutton would be. The person would be shot with a pistol. The legs would be cut off so he couldn’t chase [O.] and the arms would be cut off so he couldn’t catch [O.] and [O.] made reference to the breasts which were also on fire.
Q. That was, as instructed, a portrait of [O.’s] father?
A. Yes.
Q. Now, based upon your contact and evaluation of [O.], what sort of psychological or emotional problems have you identified?
MR. KACHINSKY: Objection.
THE COURT: I’ll sustain the objection on the basis of our prior conference. If there is any further discussion, we’ll do it outside the presence of the jury.
MR. THOMAS: No, your honor. I understand the court’s ruling.
(By Mr. Thomas)
Q. Now, aside from [O.] and [0.]’s problems-

 In People v. Hampton, 746 P.2d 947 (Colo. 1987), the issue was whether an expert could explain why rape victims delay in reporting a rape. Id. at 948-49. The issue of delay was a key point of the defense. Id. at 952. The court ruled that the expert testimony provided the jury with an explanation of the delay, and was properly admitted for that limited purpose. Id.
In State v. Hudnall, 359 S.E.2d 59 (S.C. 1987), the issue was whether an expert’s testimony regarding the common characteristics of victims of sexual abuse was admissible to bolster the testimony of the complainant that the abuse had occurred. Id. at 61-62. The court held that, since the evidence had not been submitted in order to explain what the jury might have regarded as inconsistent behavior on the part of the complainant, the evidence was irrelevant and prejudicial. Id. at 62.

 In State v. Saldana, 324 N.W.2d 227 (Minn. 1982), the court stated the issue as "whether admission of testimony concerning typical post-rape symptoms and behavior of rape victims, opinions that Fuller was a victim of rape, and an opinion that Fuller did not fantasize the rape was reversible error.” Id. at 229. In Saldana, the expert testified that "it was not unusual that Fuller did not report the incident until the following day and that many rape victims never report a rape.” Id. The court said: "The jury must not decide this case on the basis of how most people react to rape or on whether Fuller’s reactions were the typical reactions of a person who has been a victim of rape. Rather, the jury must decide what happened in this case, and whether the elements of the alleged crime have been proved beyond a reasonable doubt.” Id. at 230 (emphasis in original).

 In State v. Allewalt, 517 A.2d 741 (Md. 1986), the expert witness testified that the complainant in a rape case suffered from post-traumatic stress disorder, and that in his opinion, the cause of *464 the disorder was the rape complained of by the complainant. Id. at 741-42. The court held that the trial court did not abuse its discretion in admitting the expert’s testimony in this case. Id. at 751.