STATE of Minnesota, Respondent,

v.

Paul SOUKUP, Appellant.

No. C9-85-405.

Court of Appeals of Minnesota.

Nov. 12, 1985.

Review Denied Dec. 30, 1985.

---

C. Paul Jones, State Public Defender, Kathy King, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK and HUSPENI, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellant Paul Soukup appeals from convictions of second degree and fifth degree assault. He contends that the trial court committed reversible error when it admitted hearsay accounts of the assaults pursuant to Minn.R.Evid. 803(24), and expert testimony of the behavioral traits of abused children. We affirm.

## FACTS

On September 24, 1982 and March 13, 1984, J.R.S., Soukup's son, reported to school and police officials that his father had struck him. Soukup was charged with first and second degree assault as a result of J.R.S.'s reports. A trial was held in September 1984, at which time J.R.S. was 18. At trial J.R.S. denied that the incidents had occurred. Therefore, the State relied on his prior hearsay statements.

### The Hearsay Testimony

At the pretrial hearing, defense counsel objected to the introduction of hearsay statements made by J.R.S. about the incidents to: (1) John Brose (a teacher), (2) Brian Grenell (the high school principal), (3) James Connolly (a police officer), and (4) Thomas Boyd (a social worker). The trial court ruled that the testimony of Grenell and Brose was admissible as substantive evidence under Minn.R.Evid. 803(24). The trial court found that there were guarantees of trustworthiness because J.R.S.'s statements to these witnesses were made close in time to the alleged assaults, the witnesses had no interest in the outcome, and the testimony was not otherwise available. The testimony of the police officer

Hubert H. Humphrey, III, Atty. Gen., Norman B. Coleman, Jr., Asst. Atty. Gen., St. Paul, Robert Benson, Fillmore County Atty., Preston, for respondent.

and the social worker was admitted only as impeachment of J.R.S.'s trial testimony.

At trial, Brose testified that J.R.S. had been a student in his class. On September 24, 1982, Brose noticed J.R.S. had a sore arm. Later that day, J.R.S. was questioned by Grenell in the presence of Brose. Brose testified that J.R.S. said a "board had fallen on his arm," but later said that "his dad had hit him."

Grenell made notes of the meeting between J.R.S., Brose, and himself. Grenell testified that J.R.S. first said "a board fell on my arm in the barn" but then said "his dad hit him at breakfast because he didn't sit down."

Grenell further testified that on March 13, 1984, he called J.R.S. to his office to ask him about a cut on his head. J.R.S. told Grenell that he "had tightened hoses too tight on the Bobcat and the seal broke and his dad had walked over and hit him on the top of the head with the end of the hose."

### Testimony of J.R.S.

J.R.S. was called as a witness for the State. He admitted making statements to Brose and Grenell that implicated his father. He testified that those statements were false. J.R.S. said that on September 23, 1982, his brother David had hit him on the arm with a board. He said he lied because he didn't want his brother to get in trouble at school. J.R.S. said that on March 12, 1984, he injured his head on the Bobcat when it tipped forward. He claimed that he hit his head on the roll cage because he didn't have his seatbelt fastened. He stated that his dad would have fined him $10 for not wearing his seatbelt, so he told Brose and Grenell that his dad hit him with a hydraulic hose.

Written statements made by J.R.S. to police after each incident were admitted into evidence at trial. The written statements repeated J.R.S.'s allegations that his father struck him. J.R.S.'s sworn testimony at a neglect hearing on October 4, 1982, was read into the record. That testimony was consistent with the statements he made to Grenell and Brose about the September 24, 1982 incident.

### The Expert Testimony

■ The State also offered the testimony of Dr. Daniel Broughton, an expert on child abuse. Counsel for Soukup objected strongly, citing *State v. Saldana*, 324 N.W.2d 227 (Minn.1982), in support of his contention that Dr. Broughton's testimony was inadmissible. The trial court ruled that Broughton could testify, but that he could not use the term "child abuse syndrome."

The essence of Broughton's testimony was that the behavior of abused children can range tremendously. Such children find it difficult to come forward and talk about the abuse. Subsequently, abused children often will deny having come forward. Dr. Broughton testified:

> [I]t's not at all uncommon for children to change statements and withdraw statements * * * [b]ecause of the pressure that others within the family are applying to them.

Dr. Broughton had no personal knowledge of the Soukup family. Broughton did not give a direct opinion as to whether or when J.R.S. was telling the truth. The prosecutor relied on Dr. Broughton's testimony in his closing argument to explain J.R.S.'s changed stories.

Soukup testified at trial and denied striking J.R.S. On cross-examination, Soukup admitted that he hit his wife on one occasion and that he knew that three of his other children had complained to authorities about other incidents of physical abuse. Soukup's counsel requested and the trial court gave a jury instruction on the use of "reasonable force" to discipline children. *See* Minn.Stat. § 609.379 (1984).

Paul Soukup was found guilty of fifth degree assault for the September 1982 incident and second degree assault for the March 1984 incident. A 21–month sentence was stayed on condition that Soukup serve one year in jail and complete a counseling program.

## ISSUES

1.  Did the trial court err in admitting hearsay statements under Minn.R.Evid. 803(24)?

2.  Did the trial court commit reversible error when it admitted expert testimony on the behavioral traits of physically abused children?

## ANALYSIS

### I.

Rule 803(24) creates what has been termed a "catchall exception" that allows hearsay to be admitted in cases in which the declarant testifies if certain conditions are satisfied, the key one being that there are circumstantial guarantees of trustworthiness equivalent to those surrounding statements fitting within the 23 specific exceptions created by Rule 803. *State v. Ortlepp,* 363 N.W.2d 39, 44 (Minn. 1985). In *Ortlepp,* the Minnesota Supreme Court determined that a prior statement of a witness that was admitted for impeachment was also admissible under Minn.R. Evid. 803(24) as substantive evidence. The court determined that several factors contributed to the trustworthiness of the prior statement:

> First, there is no confrontation problem presented by the admission of the statement as substantive evidence, since [the witness] testified, admitted making the prior statement, and was available for cross-examination by defense counsel. * * * Second, since [the witness] admitted making the prior statement, there was no real dispute over whether he made it or over what it contained. Indeed, the prior statement was taped. Third, the statement was against [the witness'] penal interest, a fact that increases its reliability. Fourth, the statement was consistent with all the other evidence the state introduced * * *.

*Id.* (citations omitted). The court in *Ortlepp* also quoted an opinion by Judge Learned Hand:

> The possibility that the jury may accept as the truth the earlier statements in preference to those made upon the stand is indeed real, but we find no difficulty in it. If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court. There is no mythical necessity that the case must be decided only in accordance with the truth of words uttered under oath in court.

*Id.* at 44 n. 1 (quoting with approval *DiCarlo v. United States,* 6 F.2d 364, 368 (2nd Cir.), *cert. denied,* 268 U.S. 706, 45 S.Ct. 640, 69 L.Ed. 1168 (1925) ).

The record in this case shows that the hearsay statements had circumstantial guarantees of trustworthiness. J.R.S. testified at trial and was subject to cross-examination. He admitted making the statements and their substance. He signed written statements to police which repeated his hearsay allegations. He testified under oath at a neglect hearing as to the September 24, 1982 assault. The prior statements were completely consistent with the medical testimony regarding the nature and cause of his injuries. The trial court found that all four of the witnesses were reliable and had no reason to fabricate. All their accounts were consistent.

All the indicia of reliability considered by the Minnesota Supreme Court in *Ortlepp* are present here. The trial court did not err in ruling that the hearsay statements made to Grenell and Brose were admissible as substantive evidence of Soukup's guilt. The jury properly considered whether J.R. S.'s statements in September 1982 and March 1984 were more credible than his statements at trial in September 1984.

### II.

Soukup also argues that the trial court erred when it admitted expert testimony about the behavioral traits of physically abused children. The admission of an expert opinion generally rests within the sound discretion of the trial court. *State v. Myers,* 359 N.W.2d 604, 609 (Minn.1984).

"A reviewing court will not reverse a trial court's determination unless there is an apparent error." *Id.* We agree with Soukup that the trial court erred here.

In *State v. Saldana*, 324 N.W.2d 227 (Minn.1982), the supreme court held inadmissible an expert's testimony about "rape trauma syndrome" and the expert's opinions that the complainant had been raped and had not fantasized the rape. The expert in *Saldana* was a sexual assault counselor who had treated the complainant for ten weeks.

In determining that the expert's testimony in *Saldana* was inadmissible, the supreme court set forth the applicable legal standard:

> To be admissible, expert testimony must be helpful to the jury in reaching its decision:
>
>> The basic requirement of [Minn.R. Evid.] 702 is the helpfulness requirement. If the subject of the testimony is within the knowledge and experience of a lay jury and the testimony of the expert will not add precision or depth to the jury's ability to reach conclusions about that subject which is within their experience, then the testimony does not meet the helpfulness test.

*Id.* at 229 (quoting *State v. Helterbridle*, 301 N.W.2d 545, 547 (Minn.1980) ).

The supreme court determined that testimony about "rape trauma syndrome" and the expert's opinion that the complainant had been raped was not helpful to the jury and unfairly prejudiced the defendant. *Id.* at 229, 231. The supreme court further determined that the admission of the expert's opinion that the complainant had not fantasized the rape was erroneous since credibility is the sole province of the jury. *Id.* at 232. The supreme court directed that expert testimony concerning the credibility of a witness is admissible only in unusual cases, such as child sexual abuse cases. *Id.* at 231.

The recent case of *State v. Myers*, 359 N.W.2d 604 (Minn.1984), deals with child sexual abuse. In *Myers*, the defendant was convicted of having criminal sexual contact with a seven-year-old girl. During the trial in *Myers*, the trial court admitted expert testimony of the complainant's psychologist who described the traits and characteristics typically found in sexually abused children and identified those traits which she had observed in the complainant.

In the *Myers* opinion, the supreme court cautioned against the admission of expert testimony concerning a witness' credibility because of the possibility that the jury may be unduly influenced by an expert's opinion. *Id.* at 610. Nevertheless, the supreme court held that the psychologist's testimony was admissible on the basis that the nature of child sexual abuse places jurors at a disadvantage. *Id.* The supreme court stated:

> By explaining the emotional antecedents of the victim's conduct and the peculiar impact of the crime on other members of the family, an expert can assist the jury in evaluating the credibility of the complainant.

*Id.*

The psychologist in *Myers* also testified that in her opinion the complainant was truthful in her allegations. With respect to this testimony, the supreme court explained:

> As a general rule, * * * we would reject expert opinion testimony regarding the truth or falsity of a witness' allegations about a crime, for the expert's status may lend an unwarranted "stamp of scientific legitimacy" to the allegations.

*Id.* at 611 (quoting *People v. Izzo*, 90 Mich. App. 727, 730, 282 N.W.2d 10, 11 (1979) ). The supreme court determined, however, that the defendant waived his right to object to the psychologist's opinion testimony since the defense had sought to discredit the child's credibility by showing that the complainant's mother had not always believed the child. *Id.* at 611–12.

In the present case, we do not consider that Broughton's testimony was helpful to the jury in reaching its decision. In considering J.R.S.'s testimony, the jury had to determine which, if either, of J.R.S.'s ac-

counts of the events was true. Broughton's testimony was directed solely at this issue of determining the truth or falsity of J.R.S.'s testimony. We believe the jury, through its own common knowledge and experience, was capable of assessing J.R.S.'s credibility and reaching a decision on this issue.

This case is distinguishable from *Myers,* because in *Myers* the supreme court deviated from the general rule and allowed the expert opinion testimony regarding the complainant's veracity on the specific basis that the defendant had waived his right to object to the expert testimony. Here, we find no similar basis for deviating from the general rule. Furthermore, J.R.S. was much older than the complainant in *Myers* and he was the alleged victim of physical abuse, rather than sexual abuse. We consider that the common experience of a jury provides an adequate foundation for assessing the credibility of a teenager who is an alleged victim of physical abuse. *Cf. Myers,* 359 N.W.2d at 610.

Even though the trial court erred in admitting Broughton's testimony, we conclude that Soukup is not entitled to a new trial. The factors deemed most prejudicial in *Saldana* are not present in this case. Here, there was no professional contact between J.R.S. and Broughton. Broughton only testified about characteristics of abused children in general and the trial court did not allow him to use the term "child abuse syndrome." Unlike the psychologist in *Saldana,* Broughton did not offer a direct opinion or diagnosis related to J.R.S. or Soukup and he did not testify that an assault had occurred. In addition, his testimony was only a small part of the State's evidence. This is not a case like *Saldana* where the expert's testimony may have tipped the jury's determination one way or the other. *See Saldana,* 324 N.W.2d at 232. We cannot conclude that admission of this limited testimony was reversible error.

## DECISION

Hearsay statements made to school authorities were admissible under Minn.R.

Evid. 803(24) because there were circumstantial guarantees of trustworthiness. The trial court's admission of limited expert testimony on the characteristics of physically abused children was not reversible error.

Affirmed.