STATE of Minnesota, Appellant,

v.

Kevin Scott LARSON, Respondent.

No. C3–84–1782.

Supreme Court of Minnesota.

June 27, 1986.

Hubert H. Humphrey, III, Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul and John Riches, II, Swift Co. Atty., Benson, for appellant.

John E. Mack, New London, for respondent.

WAHL, Justice.

Kevin Scott Larson was convicted by a Swift County District Court jury of criminal sexual conduct in the third degree in violation of Minn.Stat. § 609.344(c) (1984).[1] The court of appeals reversed the conviction and ordered a new trial on the ground the trial court improperly excluded evidence that the prosecutor coerced the complainant into testifying at trial. Because we find no prejudicial error in the trial of the case below, we reverse and reinstate the conviction.

1. Larson was acquitted of a charge of first degree criminal sexual conduct arising from the same incident.

Larson was convicted of using force or coercion to accomplish sexual penetration.[2] Larson had lived with the complainant for about one year several years before the sexual assault and was the father of two of her three children. At the time of the incident that led to charges in this case, the complainant and the defendant had not been in contact with one another for about two years, except for chance encounters on the street of the town where both lived.

On March 26, 1984, at about 11:30 p.m., Larson knocked on the door of the complainant's apartment. When she asked who was there, Larson identified himself and asked to be let in, saying he had hurt his hand. The complainant let Larson into the apartment, examined his hand and advised him to seek medical help. She observed that he appeared intoxicated and asked him to leave, but he refused. She insisted again, but without effect. Larson then asked the complainant to go to bed with him but she refused. When Larson again refused to leave the apartment, the complainant went into the bedroom she shared with her three young children, got into bed and covered herself with a blanket.

The complainant said she heard Larson get up and thought he was finally leaving. Instead, he came into the bedroom, pulled off the bed covers and fell on top of her, saying "If you don't do what I say, then I'm going to rape you and then I'm going to hurt my kids. You know, 'my kids.'" He ordered her to remove the underpants and pajamas she was wearing and, when she refused, became angry and twice more threatened to rape her and so she complied. By this time, the complainant testified, she was crying and very frightened. She tried to get up from the bed but Larson put his hand at her throat. As she lay on her back, Larson fondled her breasts and put his finger into her vagina. He put his hand

to her throat several times and tried to have sexual intercourse with her, but was unable to get an erection. Eventually, he rolled over and told the complainant to give him a back rub. During the back rub, her young daughter awoke and said, "Mommy, what's wrong"? The complainant reassured the child and told her to go back to sleep.

Finally, pretending she needed to go to the bathroom, the complainant left the bedroom and ran to a neighboring apartment. The neighbor called the police, then went to the complainant's apartment where she found Larson and ordered him to leave. The two women then went down to the street and flagged down a police car. The police officer testified at trial that the complainant appeared agitated, upset and scared.

The next evening the police officer took a statement from Larson. Larson admitted he had gone to the complainant's home the previous night. He said he did not remember if he had done what the complainant alleged, but said it was "a possibility."

Several months later, in preparation for the trial, a defense investigator interviewed the complainant. Following the interview, Larson's attorney prepared a letter which read:

I would like to drop the charges against Kevin Scott Larson for alleged sexual misconduct. The reasons for this request are as follows:

1. I was not hurt physically or psychologically in this episode.

2. Kevin is the father of my children, and no purpose is going to be served by sending him to prison and causing a rift between the children and their father for life.

3. The statutes involved in 1st and 3rd degree sexual misconduct indicate serious misconduct using coercion, threats

2. Minn.Stat. § 609.344(c) (1984) provides: "A person is guilty of criminal sexual conduct in the third degree * * * if he engages in sexual penetration with another person and * * * uses force or coercion to accomplish the penetration." Minn.Stat. § 609.341, subd. 12 (1984)

defines "sexual penetration" to include "any intrusion however slight into the genital * * * openings of the complainant's body of any part of the actor's body * * * where the act is committed without the complainant's consent."

and the like. I do not believe his conduct was so serious as to fall within these charges.

4. I believe a trial is likely to be costly and is going to interfere with both of our lives, which we are attempting to get straight.

5. Mr. Larson's relations with me was close enough so that this had elements of a family dispute.

I hope you will seriously consider this in dropping or otherwise disposing of these charges.

The letter, bearing the signature of the complainant, was received by the county attorney. Charges were not dropped and the complainant testified at Larsons' trial.

### I.

The court of appeals held it was error for the trial court to refuse to allow the defendant to cross-examine the complainant to elicit testimony that the prosecution had coerced her into testifying at trial by threatening to remove her children from the home.[3] The issue arose at trial during cross-examination of the complainant. Defense counsel asked whether the prosecution had pressured her in any way to give her testimony. The county attorney objected. The defense made an offer of proof to the court out of the hearing of the jury. Defense counsel said, "First of all, pressure to give testimony by either threats, bribes or anything like that, this is always admissible in impeachment. Secondly, we would prove through this witness that the prosecution threatened to take her children

away from her unless she would testify here today * * *" The county attorney interrupted at this point, stating that the allegation of coercion was "absolutely false." He objected that the prejudicial impact of the inquiry would outweigh its probative value and the objection was sustained.[4] The court of appeals concluded that this was relevant impeachment evidence and that its exclusion prevented the defendant from confronting an adverse witness and from fully exploring her bias or motive for testifying against him. *State v. Larson*, 369 N.W.2d 561, 565 (Minn.Ct.App. 1985). The state argues the trial court's exclusion was proper because there was no factual basis for the allegation of coercion and the inquiry was not, therefore, probative. In any case, the state argues, the inquiry was unfairly prejudicial.

A trial court has broad discretion to make evidentiary rulings, *State v. Olkon*, 299 N.W.2d 89, 101 (Minn.1980), *cert. denied* 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981), but a defendant's right to cross-examine an adverse witness is of constitutional dimension. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974). While not all cross-examination is constitutionally mandated, cross-examination is recognized as a highly protected constitutional interest and a principal means by which a defendant may test the credibility of an accuser's testimony. *Davis*, 415 U.S. at 316, 94 S.Ct. at 1110; *State v. Myers*, 359 N.W.2d 604, 608 (Minn. 1984). Cross-examination that seeks to show the bias or interest of an adverse

---

**3.** Because defendant's brief to the court of appeals did not set forth this issue under a separate heading, the State argues the issue was never explicitly raised and should not have been decided. However, defendant's statement of the case to the court of appeals gave express notice that the issue would be raised:

Issues proposed to be raised on appeal.

. * * * * * *

(d) Did the District Court err in excluding all evidence showing that the "victim" was coerced by the State to give her testimony upon pain of losing custody of her children? Furthermore, defendant's brief did argue the issue, albeit in a section alleging other evidentiary errors. Finally, the scope of review on a

defendant's appeal includes "any other matter as the interest of justice may require." Minn.R. Crim.P. 28.02 subd. 11.

**4.** Although defense counsel was prevented by the county attorney's interruption from detailing what testimony the witness would offer as to the truth of this allegation of coercion, his offer of proof, insofar as he was able to make it, informed the trial court that the inquiry was relevant as impeachment of the bias or interest of a witness under cross-examination. The offer conveyed to the court the substance of the evidence offered and thus was minimally adequate to preserve the issue for appeal as required by Minn.R.Evid. 103(a)(2).

witness, particularly a witness key to the prosecution's case, is accorded greater constitutional significance than impeachment of the general credibility of the witness. *Davis*, 415 U.S. at 321, 94 S.Ct. at 1112 (Stewart, J., concurring); *State v. Schilling*, 270 N.W.2d 769, 772 (Minn.1978).

■ The state's interest in excluding irrelevant or unfairly prejudicial evidence does not outweigh Larson's constitutional right of effective cross-examination in this case. The court of appeals correctly concluded the trial court erred in prohibiting cross-examination of the complainant as to whether her testimony was coerced. Constitutional error is not reversible error, however, if it is found harmless beyond a reasonable doubt. *State v. Fossen*, 282 N.W.2d 496, 511 n. 12 (Minn.1979) (quoting *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). The error will be found prejudicial if there is "a reasonable possibility" that the error complained of might have contributed to the conviction. *See Chapman*, 386 U.S. at 23, 87 S.Ct. at 827. In this case, as in *State v. Caswell*, 320 N.W.2d 417 (Minn.1982), we do not find that possibility present.

In *Caswell* we concluded it was harmless error for the trial court to exclude impeachment evidence that a rape victim had once made a false claim of rape where the state's evidence of the defendant's guilt was strong, the defendant had admitted to sexual intercourse with the victim, and the police corroborated that the victim was distraught immediately after the alleged assault. *Id.* at 419–20. Similarly strong evidence exists in this case. The complainant not only testified at trial, but her trial testimony was strong and was corroborated by statements she made to the police on the night of the assault when she appeared, according to the police officer's trial testimony, agitated, upset and scared. Her testimony was also corroborated by the testimony of the neighbor to whom the complainant had fled for help on the night

of the assault and who had returned to the complainant's apartment to find Larson there, partially unclothed. In statements to the police, Larson himself did not deny that he had acted as the complainant had alleged and admitted her accusations were "possible." As in *Caswell*, we hold that admission of this impeachment evidence was harmless beyond a reasonable doubt. The decision of the court of appeals is reversed.

### II

Our holding on the primary issue raised in this appeal having removed the basis of the court of appeals' decision reversing Larson's conviction, we will examine the other issues decided by that court to determine if there is any other basis on which to sustain the reversal.[5]

■ Larson claims the trial court erred in prohibiting cross-examination of the complainant concerning her past sexual conduct with him. On cross-examination, the complainant was asked "Now, how long were you and Kevin living together"? The State objected and the admissibility of the inquiry was discussed out of the hearing of the jury. Defense counsel told the court he was not seeking to explore the past sexual relationship of the complainant and the defendant. The trial court allowed cross-examination on certain aspects of the complainant's past relationship with Larson, including the period of time she had lived with Larson, his being the father of two of her children, and the frequency of his visits to her home, but did not permit inquiry into her past sexual conduct with him.

Larson again claims before this court that he is not challenging the prohibition of cross-examination on the issue of the complainant's past sexual conduct. It is clear, however, that this is the subject he seeks to explore. Evidence of the past sexual conduct of a criminal sexual conduct complainant with a defendant may be intro-

---

5. The court may permit a respondent, without filing a cross-appeal, to defend a decision of judgment on any ground that the law and record permit that would not expand the relief he has been granted. Minn.R.Crim.P. 29.04, subd. 6.

duced when the evidence is shown to be material and where its inflammatory or prejudicial nature does not outweigh its probative value. Minn.Stat. § 609.347, subd. 3(c) (1984). The defendant must make a motion and an offer of proof of the relevancy of the proposed evidence. Minn. Stat. § 609.347, subd. 4 (1984). Larson did not move the trial court for admission of such evidence, as required by the statute, but instead told the trial court he was not interested in exploring the issue. We hold the trial court did not err in prohibiting cross-examination about the complainant's past sexual conduct with the defendant, and thereby affirm the decision of the court of appeals on this issue.

■ The last issue Larson raised is a claim that the trial court erred in refusing to permit the complainant to be cross-examined on the letter she had sent to the county attorney before the trial asking that charges be dropped. Larson contends the complainant's statement in the letter that she did not believe his conduct was so serious as to fall within the statutory definition of first or third degree criminal sexual conduct is relevant to proof of force or coercion in the sexual penetration to which she testified. Force or coercion being an essential element of the crime with which he was charged, Larson argues, cross-examination on this matter should have been admissible. The trial court excluded the letter from evidence on the ground that its prejudicial effect outweighed its probative value. The court observed that the letter contained legal conclusions rather than factual information, and that it had been prepared by defense counsel in circumstances that marred its credibility as a voluntary and informed request of the complainant.[6]

The issue thus presented is whether the complainant's view of the scope of the statutory definition of criminal sexual conduct is admissible as opinion testimony by a lay witness. A lay witness may testify in the form of an opinion when that opinion is: (1)

rationally based on the perception of the witness; and (2) helpful to the jury in reaching a clear understanding of the witness' testimony or the determination of a fact in issue. Minn.R.Evid. 701. We conclude the complainant's lay opinion of the "fit" between Larson's conduct and the criminal sexual conduct statutes would not have been helpful to the jury in determining whether force or coercion existed or in understanding her factual testimony about the events of that night. We affirm the holding of the court of appeals that this evidence was properly excluded under the standard set out in Minn.R.Evid. 701.

Finding no basis on which to sustain the decision of the court of appeals, we reverse and reinstate the judgment of conviction of criminal sexual conduct in the third degree.

Reversed; conviction reinstated.

---

**6.** The trial court did allow questioning of the complainant about one matter discussed in the letter: whether she had ever made a statement

about suffering physical or psychological harm as a result of the March 26th incident.