STATE of Minnesota, Appellant,

v.

David SKJEFTE, Steven Laraby, Chad
Conway Laraby, David LeRoy
Engstrom, Respondents.

No. C4–88–164.

Court of Appeals of Minnesota.

July 19, 1988.

Hubert H. Humphrey, III, Atty. Gen., Robert C. Stanich, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Richard M. Unger, Nord & Unger, Montevideo, for David Skjefte.

Cecil Naatz, Marshall, for Steven Laraby.

Eric A. De Rycke, Lake Benton, for Chad Conway Laraby.

Randall J. Slieter, Qualley, Boulton & Slieter, Canby, for David LeRoy Engstrom.

Heard, considered and decided by HUSPENI, P.J., and NORTON and THOREEN,* JJ.

## OPINION

JOHN F. THOREEN, Judge.

This is an appeal by the state from a pretrial omnibus hearing order dismissing the charges against all respondents, as well as from a partial omnibus hearing order. James Skjefte and respondents David Skjefte, Chad Laraby, Steven Laraby and David Engstrom were all charged with various counts of criminal sexual conduct. The state does not appeal dismissal of charges against James Skjefte. We reverse and remand for further proceedings consistent with this opinion.

## FACTS

Respondents were charged with sexually assaulting a 22-year-old woman, D.R., at a party in the Granite Falls home of respondent Steven Laraby on July 11, 1987.

D.R. told a friend of hers, Jacalyn Cameron, the following day that Steven Laraby and Chad Laraby had sex with her at the party. According to Cameron's statement to police, when she asked D.R. whether she let them, D.R. replied "no," then agreed with her that it was rape. Cameron testified at the omnibus hearing that D.R. was upset and shaking, but not crying.

D.R. reported the assault to police on July 22. D.R. described how she had been at the Granite Falls Liquor Store on Friday, July 10, and met respondent David Engstrom, whom she knew, and talked with him, drinking beer. Respondent Steven Laraby was in the bar and invited them to a party at his house. According to D.R.'s statement,

> Steve already was talking about, how he and this one other guy had taken on this girl * * * two on one. And I was just joking around with him, saying that I could handle that, it would be no problem.

D.R. told police that at Laraby's house she went into the living room with Engstrom, and Laraby came in and started taking off her shoes, which she resisted. He kept on undressing her, while Engstrom kissed her and held her down. She stated when Laraby began to have sex with her, she kicked and screamed and yelled at him to leave her alone. She stated that when Laraby finished, his brother, respondent Chad Laraby, started to have intercourse with her, and she kicked and screamed at him. She then fell on the floor and managed to escape to the bathroom where Chad Laraby pursued her and forced open the door. When she came out of the bathroom, respondent David Skjefte tried to kiss her and she pushed him away.

D.R. stated she went into the kitchen and asked Engstrom, "why didn't you stop those guys." Engstrom replied, "Did you

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2. ·

see the size of them, I would have gotten my ass kicked." She then left with Engstrom.

Police took a statement from respondent Engstrom on July 23. Engstrom confirmed much of D.R.'s statement, although incriminating Dave and James Skjefte more and Chad Laraby less than D.R.'s statement. Engstrom stated that when D.R. came out of the bathroom "[s]he said why didn't you help me, Dave." Engstrom replied, "look at * * * the size of these guys. There was nothing I could do." After he gave her a ride to her car, she drove off at 90 miles per hour. Engstrom stated he felt the sexual acts were forced on D.R. He stated she was intoxicated enough to be confused about what was going on.

D.R. gave an additional statement to police on August 26, 1987, relating how she remembered several weeks after the assault that Dave Skjefte had had intercourse with her "while I had passed out." She added that Steve Laraby had sex with her before Skjefte.

Respondents moved to dismiss the complaint for lack of probable cause prior to the first omnibus hearing on September 23. Respondents had also hired an investigator to collect evidence of D.R.'s previous sexual conduct under Minn.R.Evid. 404(c). Statements were taken from witnesses concerning such conduct. Meanwhile, prior to the combined omnibus and Rule 404 hearing, which had been continued, respondents James and David Skjefte served subpoenas on D.R., apparently at her place of employment. On October 29, the state filed a motion to quash the subpoenas, which was considered and deferred at the November 2 hearing.

Following the hearing, the court on November 9 issued the following "partial order":

2. As stipulated in open Court, all evidence received in either the omnibus hearing or 404 hearing will apply to both hearings.

3. The Court will defer until the end of the omnibus hearing the prosecution's motion to quash the subpoenas issued by counsel for James Skjefte and David Skjefte for the appearance of the alleged victim.

The hearings were again continued.

On November 19 D.R. contacted the prosecuting attorney and discussed her desire to have the case dropped. As she testified at the hearing, she told the prosecutor she was concerned about losing her job and about people coming to the office with subpoenas.

On November 27 D.R. contacted the defense investigator, Dennis Peart, through a friend and gave Peart a statement indicating she had consented to all sexual activity on July 11. This statement was taped and later transcribed. The transcription was a part of the trial court record marked "Exhibit 16." The trial court allowed D.R. to testify at the December 3 hearing. Respondents contend the trial court reviewed D.R.'s statement to Peart in chambers, and have made a motion to correct the record to reflect that.

At the hearing, D.R. testified in accord with her statement to Peart. She testified she had no intentions of having sex when she entered the living room and made efforts to keep her clothes on, but then relented, as she testified:

A Well, after I fought just a little, I just let him. I figured there was nothing wrong with it.

Q Was this your decision then to go ahead with it?

A Yes, it was.

Q And, as far as you were concerned, would it be correct that you were doing this willingly?

A Right.

D.R. testified Jacalyn Cameron had said "it sounded like rape," and another friend had advised her to press charges. She testified her "recantation" statement to Peart was true and correct, but also testified her statement to police was "true and correct."

D.R. testified on cross-examination the facts were the same as she initially reported to police. She also confirmed she had asked Engstrom why he hadn't stopped the other men.

The state presented testimony of Jacalyn Cameron on probable cause. Cameron testified she did not suggest to D.R. that she go to the police. She testified she asked D.R. if she had been raped and she replied yes.

The trial court granted the motions to dismiss the charges, indicating that although D.R. may have changed her testimony to avoid embarrassment, respondents should not be put on trial "if the alleged victim under oath denies that the crime occurred." The court found D.R.'s opinion that all sexual acts were consensual was admissible lay opinion, and that D.R.'s statements to police would not be admissible as substantive evidence at trial.

Respondent moved to dismiss the state's appeal at a Special Term of this court claiming the trial court's order was nonappealable under Minn.R.Crim.P. 28.04, subd. 1(1). The motion was denied on April 20, 1988, on the basis that alleged errors of law were present. This court will not disturb that determination.

### ISSUES

1. Did the court clearly err in permitting the defense to call the complaining witness?

2. Did the court clearly err in concluding D.R.'s statements to police were inadmissible hearsay?

### ANALYSIS

#### I.

The supreme court has stated the standard for determining whether the defense should be allowed to call the allegedly recanting witness at the probable cause hearing:

> We believe that a defendant may not call the victim as an exonerating witness at the probable cause hearing without making a persuasive offer of proof that the victim's testimony, when considered in the context of all the admissible evidence that the prosecutor will produce at trial, will lead to a dismissal of the charges. An offer of proof that the victim has expressed some reluctance to testify against the defendant will not be sufficient to justify a defendant's calling the victim. Indeed, an offer of proof that the victim has recanted and is prepared to testify in exoneration of the defendant will not be enough if the prosecutor makes a counteroffer which discredits the recantation or establishes the existence of other admissible evidence that would justify denial of a trial motion for a directed verdict of acquittal.

*State v. Rud*, 359 N.W.2d 573, 579 (Minn. 1984).

██ The state argues the trial court clearly erred in allowing D.R. to be called to testify. The state contends the "recantation" statement to Peart was either inadmissible hearsay?

sufficiently persuasive to require her testimony, or was sufficiently discredited to prevent her testimony. The state contends the "recantation" was made in response to pressure, was solely a change of opinion as to consent, retracting none of the earlier reported facts, and consisted of D.R.'s response to leading questions. We agree.

Respondents have moved under Minn.R. Civ.App.P. 110.05 to direct a correction of the record to show the trial court reviewed the "recantation" statement in chambers before allowing D.R. to be called. The trial court in its memorandum referred to this statement, which plainly was the basis for D.R. being called. A presumption of regularity attaches to the actions of the trial court. *City of Brooklyn Center v. Metropolitan Council*, 306 Minn. 309, 314, 243 N.W.2d 102, 106–07 (1976). We may presume the "recantation" statement was presented to the trial court in the "offer of proof" required by *Rud*. Respondents also contend an oral offer of proof was made. However, D.R.'s testimony at the omnibus hearing did not differ in any significant respect from her earlier statement; therefore the respondents could not have made a more persuasive offer of proof than was furnished by the "recantation." Accordingly, we deny as unnecessary the motion to correct the record.

The credibility of a witness' statement is generally for the finder of fact to determine. *See State v. Daniels*, 332 N.W.2d 172, 180 (Minn.1983). Exhibit 16, however, is a document which the trial court, under *Rud*, had to assess as an "offer of proof" before allowing D.R. to testify. At that point, it was as much documentary evidence, uninfluenced by witness demeanor, as it is for an appellate court. *See Merriman v. Sandeen*, 267 N.W.2d 714, 717 (Minn.1978) (de novo review of findings based solely on documentary evidence); *see also State v. Powell*, 357 N.W.2d 146, 149 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Jan. 15, 1985).

We conclude the "recantation" is thoroughly unpersuasive. After relating the circumstances of the party, the statement immediately shifts to D.R.'s "opinion" that

any sexual conduct was consensual. The statement details none of that activity, nor does it discuss D.R.'s acts of resistance or her questioning Engstrom afterwards why he did not help her. Thus, the statement retracts none of the *facts* indicating lack of consent. It is similar to the complainant's letter in *State v. Larson,* 389 N.W.2d 872, 876 (Minn.1986), held properly excluded, which stated the defendant's conduct was not so serious as to fit the criminal sexual conduct statute. In *Larson,* the trial court noted the letter "contained legal conclusions rather than factual information," and had been prepared by defense counsel. *Id.* Although D.R.'s statement was not prepared and was more voluntary than the statement in *Larson,* its focus on consent was nearly as conclusory as the opinion in *Larson.*

The "recantation" was also discredited. The state questioned D.R. about her reasons for "recanting" and elicited the pressure she felt under because of the subpoenas served on her at her place of employment. Although this was, in form, questioning for the purposes of an objection to the admission of the statement, it was in effect the "counteroffer" discrediting the recantation provided for in *Rud,* 359 N.W. 2d at 579. The state also presented the testimony of Jacalyn Cameron denying that she had suggested or pressured the rape accusation, as D.R. indicated in the "recantation."

The credibility of a witness' statement is generally for the finder of fact to determine. *State v. Daniels,* 332 N.W.2d at 180. However, we need not defer to the trial court's assessment of D.R.'s statement, which is documentary evidence. *Merriman v. Sandeen,* 267 N.W.2d at 717.

## II.

■ The trial court determined that D.R.'s statements to police would not be admissible at trial under *State v. Ortlepp,* 363 N.W.2d 39 (Minn.1985), *pet. for rev. denied* (Minn. Dec. 30, 1985), and *State v. Soukup,* 376 N.W.2d 498 (Minn.Ct.App. 1985), each involving the "catchall" hearsay exception, Minn.R.Evid. 803(24).

Based on this determination and on D.R.'s testimony at the probable cause hearing, the court dismissed the complaints for lack of probable cause.

This court in *Soukup* found admissible statements of physical abuse made to school officials by a boy who later denied the abuse occurred. The court noted the boy testified at trial, and admitted making the statements, and that the statements were completely consistent with the medical testimony. *Id.,* 376 N.W.2d at 501. The trial court had also found the persons to whom the statements were made were reliable and had no reason to fabricate. *Id.* Similarly, D.R. also admitted making the statements to police, which were consistent with the statement of respondent Engstrom. *See State v. Whiteside,* 400 N.W.2d 140, 146 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Mar. 18, 1987) (hearsay statement admissible under Rule 803(24) was consistent with the testimony of other witnesses). D.R. even testified at the probable cause hearing that her statements to police were true and correct. She retracted none of the details given in them.

The trial court in this case distinguished *Soukup* because D.R. was not a child; it distinguished *Ortlepp* because D.R.'s statement was not against her penal interest. Under the catch-all exception, however, the statement need not be against interest, although that is an alternative indicia of reliability. Nor can *Soukup* be distinguished based on the declarant's age. We conclude the trial court abused its discretion in determining D.R.'s statements to police were inadmissible hearsay. *See Whiteside,* 400 N.W.2d at 145.

The state argues the court erred in dismissing the complaints because there was substantial evidence admissible at trial justifying denial of a motion for a directed verdict of acquittal. *Rud,* 359 N.W.2d at 579. Such an order is not appealable, Minn.R.Crim.P. 28.04, subd. 1(1), and we are reluctant to reverse a trial court's judgment on probable cause, based in part on testimony given at the omnibus hearing. Nevertheless, because the dismissal order was influenced by the errors of law dis-

cussed above, a reconsideration of probable cause is required.

The state has moved to strike a number of assertions from respondent David Skjefte's brief. The first, that the state had subpoenaed D.R.'s attendance at the December 3 hearing, is irrelevant because the state was required to do so by the terms of the court's November 9 order. The second, that D.R. was a "voluntary" witness, is equally irrelevant because the record reflects the pressure on her from defense subpoenas. The third, that Laraby's home was also Skjefte's, is not in the record and is stricken. The fourth, that Laraby "probably understood" there would be sex at the party, is merely argument. The sixth, that D.R. asked to speak to defense investigators, is supported by the record. Finally, local community opinion of the truth of the allegations is not in the record and is stricken.

## DECISION

The trial court clearly erred in permitting the defense to call D.R. as an exonerating witness at the omnibus hearing. The court clearly erred in determining D.R.'s statements to police were inadmissible hearsay. The issue of probable cause is remanded to the trial court for reconsideration in accord with this opinion. Respondents' motion to correct the record is denied. Appellant's motion to strike portions of respondent David Skjefte's brief is granted in part and denied in part.

Reversed and remanded.