*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0125**

State of Minnesota,
Respondent,

vs.

Kelly Bruce Goggleye,
Appellant

**Filed January 11, 2016
Affirmed in part, reversed in part, and remanded
Worke, Judge**

St. Louis County District Court
File No. 69DU-CR-14-1811

Lori Swanson, Attorney General, Karen B. Andrews, Assistant Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Duluth, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Larkin, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D  O P I N I O N**

**WORKE**, Judge

Appellant challenges his first-degree criminal-sexual-conduct convictions, arguing

that: (1) the evidence insufficiently supports his convictions, (2) he was denied a fair trial

due to improper vouching testimony, and (3) he was improperly convicted of three counts of first-degree criminal sexual conduct based on the same criminal act against the same complainant. We affirm in part, reverse in part by vacating judgment of conviction as to all but one count, and remand for resentencing.

## FACTS

A.H. dated appellant Kelly Bruce Goggleye from August 2006 through February 2009. A.H. has two children, M.H. and R.C. M.H. turned four years old in late August 2006. In February 2013, Ashley Skadsem, a mental-health practitioner, began working with A.H. and her children. During a therapy session on June 7, 2013, M.H. disclosed that Goggleye raped her. Skadsem described M.H.'s demeanor as "sad, scared, confused, [and] apologetic."

On June 14, 2013, Mary Ness, a social worker, interviewed M.H. M.H. stated that Goggleye raped her in a brown house with white poles when she was four or five years old. M.H. stated that Goggleye approached her when A.H. was gone, took off his clothes, and explained that sex was "for people to basically put their penis and vagina together" and that sex "was okay for [her] to do." Goggleye attempted to have sex with M.H. until she told him to "please stop" because it hurt. M.H. thought the incident occurred in a bedroom, but she could not remember the exact room or what she was wearing.

M.H. accurately identified a penis and a vagina on two drawings. M.H. stated that Goggleye's penis looked like the boy's penis in the drawing, "only bigger and hairier." Additionally, M.H. stated that Goggleye's penis was pointed "kind of up." M.H. stated

2

that Goggleye raped her multiple times, in different locations, but she was afraid to tell A.H. because she did not want to cause more stress. M.H. thought that sperm came out of Goggleye's penis, and she described what it felt like. When asked what happened after Goggleye ejaculated, M.H. said that she "jump[ed] or move[d] away [be]cause [she] didn't like it." M.H. stated that Goggleye might have touched her butt with his penis and his hands.

M.H. also received therapy from psychotherapist Alex Ross. M.H. told Ross that Goggleye took her clothes off and had sex with her. M.H. stated that Goggleye put gel on her vagina and put his finger in her vagina. M.H. also told Ross that Goggleye "would rub his penis between her buttocks and then make her lie on top of him and his sperm would come."

On June 4, 2014, the state charged Goggleye with three counts of first-degree criminal sexual conduct.[1] A jury trial began on August 5, 2014. The jury heard testimony from M.H., A.H., Skadsem, Ness, Ross, and Goggleye. M.H. testified that Goggleye sexually abused her multiple times from the ages of three to seven and that Goggleye used his hands and penis to touch her vagina, butt, and breasts. M.H. could not specify how many times the incidents occurred but agreed that it happened more than 20 times. M.H. stated that the abuse occurred at Goggleye's house, her house, and her old

---

[1] Count one: Minn. Stat. § 609.342, subd. 1(a) (2006) (sexual penetration where complainant under 13 years old and actor more than 36 months older); count two: Minn. Stat. § 609.342, subd. 1(g) (2006) (significant relationship to the complainant and complainant under 16 years of age at the time of sexual penetration); and count three: Minn. Stat. § 609.342, subd. 1(h)(iii) (2006) (significant relationship to complainant who was under 16 years of age at the time of sexual penetration and multiple acts of sexual abuse committed over an extended period of time).

apartment. M.H. did not remember specific dates, but she remembered incidents. When asked whether Goggleye touched her vagina with his penis, M.H. stated that he did and that it happened more than 20 times.

The jury watched the recorded interview that took place between M.H. and Ness. The prosecutor asked Ness to describe M.H.'s demeanor during the interview. After Ness replied that she thought that M.H. was "trying her hardest to remember what she could and to be honest," defense counsel objected. The district court sustained the objection and instructed the jury to disregard Ness's answer. On August 8, 2014, the jury found Goggleye guilty as charged. On October 24, 2014, the district court sentenced Goggleye to a presumptive guidelines sentence of 360 months in prison. Although the district court entered convictions on each count, the court stated that the 360-month sentence was for count one. On the order and warrant of commitment, the district court entered convictions on each count. This appeal follows.

## D E C I S I O N

### *Statutory Interpretation*

Before deciding whether the evidence sufficiently supports Goggleye's convictions, we must determine whether Minn. Stat. § 609.342, subd. 1(g), (h)(iii) (2006), requires sexual penetration or sexual contact.

> A person who engages in sexual penetration with another person, or in sexual contact with a person under 13 years of age as defined in section 609.341, subdivision 11, paragraph (c), is guilty of criminal sexual conduct in the first degree if any of the following circumstances exists:
> . . . .

4

(g) the actor has a significant relationship to the complainant and the complainant was under 16 years of age at the time of the *sexual penetration*.

(h) the actor has a significant relationship to the complainant, the complainant was under 16 years of age at the time of the *sexual penetration*, and:

. . . .

(iii) the sexual abuse involved multiple acts committed over an extended period of time.

Minn. Stat. § 609.342, subd. 1(g), (h)(iii) (emphasis added). Sexual contact with a person under 13 is "the intentional touching of the complainant's bare genitals or anal opening by the actor's bare genitals or anal opening with sexual or aggressive intent or the touching by the complainant's bare genitals or anal opening of the actor's . . . bare genitals or anal opening with sexual or aggressive intent." Minn. Stat. § 609.341, subd. 11(c) (2006). The jury instruction guides include sexual penetration as an element of paragraphs (g) and (h)(iii) but do not include "sexual contact with a person under 13." 10 *Minnesota Practice*, CRIMJIG 12.09, 12.11 (2006).

Goggleye argues that the district court should follow the jury instruction guides that require penetration as an element of each offense. The district court stated that the statute was ambiguous, and the legislature intended to include "sexual contact with a person under 13" as a part of paragraphs (g) and (h)(iii). The parties did not brief this issue, but failure to brief an issue does not prevent this court from considering the district court's ruling. *See* Minn. R. Crim. P. 28.02, subd. 11 (stating that on appeal this court may review any ruling of the district court, "as the interests of justice may require").

Questions of statutory interpretation are reviewed de novo. *State v. Nodes*, 863 N.W.2d 77, 80 (Minn. 2015). "If a statute is susceptible to only one reasonable

5

interpretation, we interpret the statute according to its plain meaning." *Id.* If the statute's language is ambiguous, we look to other indicia to ascertain legislative intent. *Dupey v. State*, 868 N.W.2d 36, 39 (Minn. 2015). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). Courts may assume that "the legislature does not intend a result that is absurd, impossible of execution, or unreasonable." Minn. Stat. § 645.17(1) (2014).

Section 609.342, subdivision 1 is susceptible to more than one reasonable interpretation. On one hand, paragraphs (g) and (h)(iii) could be interpreted to include "sexual contact with a person under 13" because the overarching language in subdivision 1 appears to apply to paragraphs (a) through (h). *See* Minn. Stat. § 609.342, subd. 1. On the other hand, paragraphs (g) and (h)(iii) specifically mention sexual penetration but do not mention sexual contact with a person under 13. *See id.*, subd. 1(g), (h)(iii). Thus, both paragraphs could be interpreted to require sexual penetration.

Adopting the latter interpretation, however, leads to absurd and unreasonable results. Under this interpretation, Goggleye could be convicted of first-degree criminal sexual conduct under section 609.342, subdivision 1(a) if, on one occasion, he engaged in sexual contact with a person under 13 years of age. However, if he committed such conduct on numerous occasions and had a significant relationship to the complainant, his offenses would not fall under the scope of section 609.342, subdivision 1(g) or (h)(iii). Thus, the district court did not err in its interpretation of section 609.342.

*Sufficiency of the evidence*

Goggleye argues that the evidence does not support his convictions. When reviewing a claim of insufficient evidence, we review the record to determine whether the evidence, when viewed in a light most favorable to the verdict, is sufficient to allow the jury to reach the verdict that it did. *State v. Webb*, 440 N.W.2d 426, 430 (Minn. 1989). We "assume that the jury believed the state's witnesses and disbelieved contrary evidence." *Dale v. State*, 535 N.W.2d 619, 623 (Minn. 1995). "This is especially true whe[n] resolution of the case depends on conflicting testimony, because weighing the credibility of witnesses is the exclusive function of the jury." *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn. 1980). The verdict shall not be disturbed if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn. 2004).

Goggleye argues that the evidence was insufficient because there was a significant delay in reporting, M.H. could not remember specific details, M.H. had a source of sexual knowledge independent from Goggleye, and Goggleye denied the abuse. We are not persuaded because these claims go to the weight of the evidence and witness credibility. On appeal, we do not reweigh the evidence or assess witness credibility. *See State v. Johnson*, 568 N.W.2d 426, 435 (Minn. 1997) ("The credibility of individual witnesses and the weight to be given to each witness' testimony are issues for the jury to determine.").

Additionally, M.H. agreed that Goggleye touched her vagina with his penis more than 20 times, and she stated that he put his finger inside her vagina. The incidents occurred when M.H. was less than 13 years old. Goggleye had a significant relationship with M.H. because he dated A.H. for over two years, regularly slept at A.H.'s house, and supervised M.H. while A.H. was absent. *See* Minn. Stat. § 609.341, subd. 15(3) (2006) (defining significant relationship as a situation in which the actor is "an adult who jointly resides intermittently or regularly in the same dwelling as the complainant"). Further, Ness, Skadsem, and Ross provided testimony supporting M.H.'s accusations. Thus, the evidence sufficiently supports Goggleye's convictions because the jury could reasonably conclude that he was guilty of the charged offenses. *Bernhardt*, 684 N.W.2d at 476–77.

Goggleye also argues that the evidence was insufficient due to a lack of corroborating evidence. A conviction can rest upon the testimony of a single credible witness. *Johnson*, 568 N.W.2d at 435; *see* Minn. Stat. § 609.347, subd. 1 (2006) (stating that a first-degree criminal-sexual-conduct prosecution does not require corroboration of the victim's testimony). "Corroboration of an allegation of sexual abuse of a child is required only if the evidence otherwise adduced is insufficient to sustain [a] conviction." *State v. Myers*, 359 N.W.2d 604, 608 (Minn. 1984).

Goggleye concedes that a conviction may rest on the testimony of a single credible witness, but citing *State v. Foreman*, he argues that reversal is required when reasons exist to question the victim's credibility and the state failed to present corroborating evidence. *See* 680 N.W.2d 536, 539 (Minn. 2004). In *Foreman*, the appellant relied on three cases that resulted in reversal. *Id.* But the supreme court was not persuaded by

those cases and explained how they were distinguishable from Foreman's case. *Id.* Likewise, we are not persuaded by Goggleye's reliance on the cases examined in *Foreman*.

In *State v. Huss*, the three-year-old alleged victim provided the only direct evidence, which was inconsistent with prior statements and facts. 506 N.W.2d 290, 290–92 (Minn. 1993). Additionally, the supreme court recognized that the repeated use of a highly suggestive book on sexual abuse and its accompanying audio tape may have led the child to imagine the abuse. *Id.* at 292-93. In *State v. Langteau*, the alleged victim provided the only significant evidence, but his actions were "unexplained," and nothing linked the defendant to the crime. 268 N.W.2d 76, 77 (Minn. 1978). Finally, in *State v. Gluff*, the supreme court criticized an identification lineup procedure, stating that testimony about the defendant's identification "clearly lacked probative value." 285 Minn. 148, 151, 172 N.W.2d 63, 65 (1969). Additionally, the supreme court recognized the lack of evidence to corroborate the defendant's involvement in the crime. *Id.* at 152, 172 N.W.2d at 65.

Unlike these cases, M.H. was 11 years old when she testified; she was never exposed to highly suggestive material; her testimony, for the most part, was consistent with her prior statements; and her actions were not "unexplained" because multiple witnesses testified that M.H. behaved in a manner consistent with characteristics of children who have been sexually abused. Lastly, this case did not involve a questionable lineup procedure.

9

Moreover, corroborating evidence is not necessary here because the evidence sufficiently supports Goggleye's convictions. *See Myers*, 359 N.W.2d at 608. But even if corroborating evidence were necessary, M.H.'s claims were corroborated by her out-of-court statements, Goggleye's opportunity to commit the crimes, and the testimony of the state's other witnesses. *See State v. Ross*, 451 N.W.2d 231, 237 (Minn. App. 1990) (concluding that a child's testimony was corroborated by her out-of-court statements, defendant's opportunity to commit the crime, and the consistency of the child's descriptions), *review denied* (Minn. Apr. 13, 1990); *see also Myers*, 359 N.W.2d at 607-08 (recognizing that a child's testimony was supported by testimony of the child's mother, a social worker, and a psychologist). Therefore, the evidence sufficiently supports Goggleye's convictions.

***Vouching***

Goggleye also argues that he was denied a fair trial when Ness "indirectly vouched" for the truthfulness of M.H.'s testimony. Our standard of review depends on whether Goggleye objected to Ness's testimony. *See State v. Meldrum*, 724 N.W.2d 15, 19 (Minn. App. 2006) (stating that absent objection at district court, an appellate court reviews for plain error), *review denied* (Minn. Jan. 24, 2007). Once the district court rules on the admissibility of evidence, "a party need not renew an objection or offer of proof to preserve a claim of error." Minn. R. Evid. 103(a). But "evidentiary objections should be renewed at trial when an in limine or other evidentiary ruling is not definitive but rather provisional or unclear, or when the context at trial differs materially from that

at the time of the former ruling." *State v. Word*, 755 N.W.2d 776, 783 (Minn. App. 2008).

Here, Goggleye did not object to Ness's statements during trial, but he filed a motion in limine requesting the district court to prohibit the state from eliciting vouching testimony from its witnesses. The district court addressed Goggleye's motion, but its ruling focused on a recording of Goggleye's interrogation with law enforcement discussing Goggleye's past misconduct rather than potential statements from Ness. The district court stated:

> With respect to the defense motion in limine on the vouching issue, I have had a chance to review the entire interrogation of Mr. Goggleye and also review the case law that was cited by the [s]tate. At this point the [c]ourt does believe with the redactions that [the state] represented yesterday that [it] was going to be making, that there is no vouching issue by playing that recording.
> . . . .
>
> Again I would ask counsel to meet and confer before that final redacted version is introduced to the jury and if there is anything else in particular that we need to take up, we'll do that at that time.
> So my denial of the motion in limine . . . was limited only to the vouching issue.

It is unclear whether the district court's ruling applied strictly to statements made by law enforcement in the recording or to all of the state's witnesses. Goggleye did not attempt to clarify the district court's ruling, and he did not object to Ness's statements at trial. Thus, we review for plain error.

To constitute plain error, Goggleye must demonstrate (1) an error, (2) that was plain, and (3) that affected his substantial rights. *State v. Griller*, 583 N.W.2d 736, 740

11

(Minn. 1998). A witness may not vouch for the credibility of another witness. *State v. Ferguson*, 581 N.W.2d 824, 835 (Minn. 1998). Experts may testify to the characteristics commonly displayed by children who have been sexually abused, but testimony as to the child's truthfulness is inadmissible because "the expert's status may lend an unwarranted stamp of scientific legitimacy to the allegations." *State v. Vick*, 632 N.W.2d 676, 689 (Minn. 2001) (quotation omitted).

Goggleye argues that Ness "indirectly" vouched for M.H. on three occasions. First, when she stated: "Disclosure is [most] often . . . a process and . . . children will disclose things, will be able and willing to tell certain things at certain times." The second alleged instance of vouching occurred when Ness stated:

> That's a very–very common response and there is–there are so many unknowns for a child then to end, and I think that the–even the process of memory of abuse survivors is–abuse victims is it can be patchy, and I feel that she had incomplete memories regarding some things and in other situations I feel like she remembered but wasn't in a place to be able to say that as completely as she might.

Finally, Goggleye argues that Ness vouched for M.H. when she stated that she would not be surprised by a child telling additional facts in subsequent interviews.

Admission of Ness's statements does not constitute plain error. First, Goggleye failed to show error because Ness's statements do not constitute "vouching." Ness's comments related to characteristics of abused children and the characteristics displayed by M.H. Courts have long upheld the admission of expert testimony regarding the typical characteristics of children who were sexually abused. *See, e.g.*, *State v. Hall*, 406 N.W.2d 503, 505 (Minn. 1987) (holding that admission of expert testimony regarding

reporting conduct of an adolescent sexual-assault victim is within the discretion of the district court). The supreme court has stated that "[b]ackground data providing a relevant insight into the puzzling aspects of the child's conduct and demeanor which the jury could not otherwise bring to its evaluation of her credibility is helpful and appropriate" in child sexual-abuse cases. *Myers*, 359 N.W.2d at 610. Thus, Goggleye failed to show error because Ness did not vouch for M.H.'s truthfulness.

Second, even if Goggleye established error, the error did not affect Goggleye's substantial rights. An error affects substantial rights "if the error was prejudicial and affected the outcome of the case." *Griller*, 583 N.W.2d at 741. Ness's statements are not prejudicial because the statements constitute a small portion of her testimony. *See State v. Soukup*, 376 N.W.2d 498, 503 (Minn. App. 1985) (concluding that a defendant was not entitled to a new trial, in part, because the expert's testimony was only a small part of the state's evidence), *review denied* (Minn. Dec. 30, 1985).

Additionally, the jury watched a video of M.H.'s accusations that provided an independent basis to judge her credibility. *See State v. Wembley*, 712 N.W.2d 783, 792 (Minn. App. 2006) (holding that an expert violated the rule against vouching but did not cause unfair prejudice because a video-taped interview provided the jury with an independent basis of knowledge), *aff'd* 728 N.W.2d 243 (Minn. 2007). Thus, Ness's statements did not affect Goggleye's substantial rights.

Goggleye next argues that he was denied a fair trial when Ness "directly vouched" for M.H.'s truthfulness. At trial, the state asked Ness to describe M.H.'s demeanor during an interview. Ness replied that M.H. "was trying her hardest to remember what

13

she could and to be honest." The district court sustained Goggleye's objection to this testimony and instructed the jury to disregard Ness's response.

To determine whether this evidence affected the fairness of Goggleye's trial, we consider the manner in which the evidence was presented. *Ferguson*, 581 N.W.2d at 833. "When an error implicates a constitutional right, we will award a new trial unless the error is harmless beyond a reasonable doubt." *State v. Davis*, 820 N.W.2d 525, 533 (Minn. 2012). An error is harmless beyond a reasonable doubt if the verdict was surely unattributable to the error. *Id.*

Ness's statement constitutes harmless error for the following reasons. First, Ness's statement constitutes a small portion of her testimony and the additional testimony presented at trial. *See Soukup*, 376 N.W.2d at 503 (concluding that a defendant was not entitled to a new trial, in part, because the expert's testimony was a small part of the state's evidence). Second, the video of M.H.'s interview provided an independent basis to judge credibility. *See Wembley*, 712 N.W.2d at 792 (holding that there was no unfair prejudice because a video-taped interview provided the jury with an independent basis of knowledge).

Additionally, the state did not intentionally elicit Ness's testimony because it asked Ness to describe M.H.'s demeanor, not her truthfulness. "[U]nintended responses under unplanned circumstances ordinarily do not require a new trial." *State v. Hagen*, 361 N.W.2d 407, 413 (Minn. App. 1985), *review denied* (Minn. Apr. 18, 1985). Finally, the district court told the jurors to disregard Ness's statement. Thus, Ness's statement was harmless and did not deny Goggleye a fair trial.

14

*Sentencing*

Finally, Goggleye argues that the district court improperly entered judgments on three counts of first-degree criminal sexual conduct because his convictions are based on the same act against the same complainant. A guilty verdict alone does not constitute a conviction. *Spann v. State*, 740 N.W.2d 570, 573 (Minn. 2007). A "conviction" occurs when a guilty verdict is accepted and recorded by the district court. Minn. Stat. § 609.02, subd. 5(2) (2006). "[W]hen the defendant is convicted on more than one charge for the same act . . . the [district] court [is] to adjudicate formally and impose sentence on one count only." *State v. Pflepsen*, 590 N.W.2d 759, 766 (Minn. 1999) (quotation omitted). The official judgment of conviction may serve as conclusive evidence of whether an offense was formally adjudicated. *Id.* at 767. Here, the order and warrant of commitment states that the district court convicted, and thus adjudicated Goggleye on all three counts.

"Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04, subd. 1 (2006). An "included offense" is "[a] crime necessarily proved if the crime charged were proved." *Id.*, subd. 1(4). When determining whether an offense is an included offense, this court looks to the elements of the offense, not the facts of the particular case. *State v. Bertsch*, 707 N.W.2d 660, 664 (Minn. 2006). The protections of section 609.04, however, do not apply if the offenses constitute separate criminal acts. *Id.*

The state charged Goggleye with three counts of first-degree criminal sexual conduct for acts that occurred between August 1, 2006, and February 1, 2009. Count two

involved a single act that occurred during the same period as the multiple acts in count three. Thus, the district court erred by entering a conviction for count two because proof of multiple acts under section 609.342, subdivision 1(h)(iii) necessarily includes proof of a single act under section 609.342, subdivision 1(g), if the single act occurred during the same time period as the multiple acts.

Count three does not necessarily include count one because satisfying the elements of count three does not necessarily satisfy the elements of count one. *See* Minn. Stat. § 609.04, subd. 1 (listing requirements for an included offense). For example, the state could successfully prove that Goggleye had sexual contact with a complainant under 13, Goggleye had a significant relationship to the complainant, and the sexual abuse involved multiple acts committed over an extended period of time. But count one also requires that Goggleye was more than 36 months older than the complainant. Minn. Stat. § 609.342, subd. 1(a). Thus, count one is not an included offense of count three.

Section 609.04 also prohibits a defendant from being convicted "of two counts of criminal sexual conduct (different sections of the statute or different subsections) on the basis of the same act or unitary course of conduct." *State v. Folley*, 438 N.W.2d 372, 373 (Minn. 1989). In *Folley*, a jury found Folley guilty of violating Minn. Stat. § 609.342, subd. 1(a), 1(h)(v) for engaging in multiple acts of sexual penetration with the complainant over an extended period of time. *Id.* at 373. The district court sentenced Folley to concurrent 43-month prison terms. *Id.* The supreme court held that one conviction should be vacated because "both convictions were based on the same evidence and the same acts, all of which occurred before [the] complainant turned 13." *Id.* Here,

16

count one and count three were based on the same evidence and the same acts and the acts occurred before M.H. turned 13. Thus, counts one and three are based on the same unitary course of conduct. Accordingly, we remand to the district court to vacate the judgment of conviction for counts one and two.

**Affirmed in part, reversed in part, and remanded.**